## THE COUNTY OF MARSHALL v. BAUM ET AL.

1. **Trust:** DEFALCATION OF TREASURER: PROPERTY BOUGHT WITH PUBLIC FUNDS. Evidence considered and held insufficient to establish a trust in favor of the county in certain lands bought by a firm of which a defaulting county treasurer was a member, by showing that they were purchased with county funds.

*Appeal from Tama District Court.*

MONDAY, APRIL 26.

THIS is an action in equity in which it is claimed that a large quantity of land situated in Marshall county, and the legal title to which is in the defendants, Fred. Baum, his wife

Rachel D. Baum, and the Gilman Land and Lot Company, is in equity the property of the plaintiff, and held by said defendants in trust for the plaintiff, upon the alleged ground that said lands were purchased by the defendant Fred. Baum and one H. A. Gerhart with money which was wrongfully taken from the treasury of plaintiff. It is also claimed that said Fred. Baum has in his possession a large amount of tax sale certificates, money, notes and mortgages, which in equity· belong to the plaintiff. It is prayed that all of the said lands, notes, mortgages, tax sale certificates and ·money be decreed to be the property of the plaintiff, and its title thereto be declared to be perfect and complete.

Issues were joined upon the allegations of the petition, and upon a trial to the court upon the merits the plaintiff's petition was dismissed. Plaintiff appeals. Further facts appear in the opinion.

*Caswell & Meeker*, for appellant.

*Brown & Binford* and *H. E. J. Boardman*, for appellees.

ROTHROCK, J.—I. H. A. Gerhart was elected treasurer of Marshall county at the general election in 1865, and entered upon the duties of the office January 1, 1866. He held that position by successive elections up to the date of his death, on March 8, 1876. In February, 1868, Gerhart and the defendant Fred. Baum entered into a partnership to carry on a general land agency business under the name and style of H. A. Gerhart & Co. The place of business was at the county treasurer's office in Marshalltown, Baum had been, before that time, in the employ of Gerhart as a clerk in the treasurer's office. At the time of Gerhart's election he had very little property aside from a homestead, which he continued to own and occupy up to the time of his death. Baum had some means,

1. TRUST: defalcation of treasurer: property bought with public funds.

being the proceeds of a farm and some live-stock. How much he had we need not definitely determine. It is a subject of dispute between the parties, and the evidence upon that point is not in harmony. In the view we take of the case, it is not a material consideration whether he was worth $3,000 or $5,000, which sums seem to be within the range of the evidence. The partnership formed by these parties continued until Gerhart's death. A large amount of land was bought and sold by the firm, and the books kept by the partnership show that the business was profitable. The lands purchased and sold by the partnership in nearly every instance realized to the firm large profits.

Gerhart's administration of the treasurer's office, during the whole time he was the incumbent thereof, was marked by serious irregularities. It was his habit to make loans of large amounts of money, to sell lands at tax sale and keep the tax sale certificates for the purchasers without payment therefor, and when the land was redeemed he paid the purchasers the penalty and interest. It was a common and usual occurrence with him to make out tax receipts for his friends and credit the tax as paid, and keep the receipts until it suited the convenience of the tax payer to make payment. It is needless to say that defalcation was the inevitable result. Its amount depended only upon the length of time he held the office and the extent of such mismanagement. At his death he was a defaulter for more than $39,000.

During all the time he was in office he deposited large amounts of money with the banks in Marshalltown, and always made such deposits in his individual name, without any other designation of the ownership of the funds.

The management of the board of supervisors was but little better than that of the treasurer. During the whole time that Gerhart was in office there never was an exhibit made by him of the money belonging to the county at any settlement with the board of supervisors. The board never saw nor counted the money which the books and accounts of the

office showed was on hand. It is impossible, therefore, to ascertain how much money Gerhart had in the county safe at the date of any of the settlements which the law required to be made. At the last settlement, in order to make up the amount which should have been on hand, Gerhart presented to the board a certified bank check. At that time he had no money on deposit in the bank, and his account was overdrawn. To meet this deficiency of over $39,000 there was on hand, as appellee claims, some $24,000 in old tax receipts, notes, due bills and tax sale certificates. The amount of these assets is disputed. Appellant claims that they were less than. $11,000, and that most of the $39,000 was wrongfully taken from the treasury by the members of the firm of H. A. Gerhart & Co., and used for company purposes, investing it in the lands and property in controversy, which should be decreed to belong to the plaintiff.

Of course it is incumbent on the plaintiff to prove that the money of the county was invested in the property in controversy. To establish a trust in the defendant it must be shown that the trust property was acquired with the funds belonging to the county treasury. To this question of fact we will direct our attention.

The plaintiff, to establish the trust, relies upon the fact that at the time the partnership between Gerhart and Fred. Baum was entered into neither of them had means to carry on the business, and that Gerhart furnished all the money from the county treasury to pay for land purchased; that he could have furnished it in no other way and from no other source. It is also averred that Fred. Baum had no funds to put into the business of the firm, or at least not sufficient to carry on the business. The defendants claim that the business of the firm, which consisted mainly in buying and selling land, was very profitable, and that if any money was taken from the county treasury by the treasurer and used in the business, it was not only paid back, but that the evidence shows an

amount largely in excess of that paid out was received back by Gerhart.

The books of the firm of Gerhart & Co. were kept by Gerhart. The title to the land purchased was taken in the name of Baum. These books were introduced in evidence. They appear to have been regularly kept, and show the land transactions of the firm. The parties do not agree as to the state of the accounts as shown by the books. We have taken the time and labor to make a thorough examination of these accounts, and, without entering into the details, which would be wholly impracticable here, we will give the result of our examination.

The total amount paid out by Gerhart for the partnership, as shown by the books, was $17,877.68. The total amount received by him from the partnership was $22,373.34. It thus appears that Gerhart received $4,495.66 more on partnership account than he paid out. The amount of money invested by the partnership did not at any time, as shown by the books, exceed the amount paid out up to the same time more than $2,500. During the year 1872 the amount invested by the partnership was entirely drawn back or paid back to Gerhart, and after that the amount invested did not at any time exceed the amount paid out by Gerhart. No cash account was kept. Gerhart seemed to represent cash. He paid for lands in all cases where cash was paid, and where notes were given they were given by Baum and paid by Gerhart. When partnership land was sold Gerhart received the cash payments. The notes for deferred payments were taken in the name of Baum, but when paid Gerhart received the money.

According to the books the business of the firm was quite profitable. In many cases land purchased was in a short time sold at a large advance. The first tract purchased was 160 acres, April 8, 1868, for which $904.50 was paid. It was sold in July of the same year for $1,600. This is but one transaction. There are many others showing fully as large

profits. Indeed, it does not appear that there were any losses upon lands purchased and sold by the partnership.

We do not understand that appellant assails the correctness of these transactions as they appear upon the books. It is insisted, however, that large amounts of money were paid out of the treasury by Gerhart before there were any returns; and that as these payments were wrongful it is incumbent on the defendant to show that the money returned was actually put into the treasury, and that instead of making such showing it appears that the money returned was wrongfully deposited in banks. It is also claimed that Baum knew that the funds of the county were being used by Gerhart in the partnership business.

We have carefully examined the evidence upon this point. Baum most explicitly denies that he had any such knowledge, and denies that he had any suspicion that Gerhart was a defaulter until very shortly before his death. It is claimed that this denial is overcome by the fact that large amounts of money were paid by Gerhart into the firm business, and by the knowledge which Baum must have acquired by his position in the treasurer's office, and other circumstances in the case. Against these considerations, however, we have the well established fact that Gerhart alone carried the key of the main vault of the safe in his office. No one but himself knew its contents. He had the exclusive control of his bank deposits, and, so far as appears, Baum did not know of the condition of his accounts with the county, or rather did not know that he was short of funds to meet all the demands of the county.

Further than this we are satisfied that the business of the partnership, as shown by the books, at no time from its commencement required to exceed $2,500 in money, and we are satisfied that Baum was possessed of at least that amount when the partnership commenced. And we are not prepared to say, from the evidence, that Gerhart was not at that time the owner of sufficient means of his own to carry on his in-

terest in the business. If Baum did not know that Gerhart was wrongfully using the public money in the business of the partnership, if it was used, and Gerhart received from the partnership more money than he paid out on its account, it is difficult to see how the county can have any claim against Baum. One who has borrowed county funds of the treasurer and afterward repaid them cannot be held liable to the county. *Perley v. The County of Muskegon*, 32 Mich., 132. If Gerhart did use the money of the county in the partnership business, and received it again, that was an end of the transaction. The books show that what he received from the partnership he received personally, and if after receiving it he wrongfully deposited it in banks, instead of putting it into the vaults of the treasury, that was his own wrongful act, and should not be attributed to others who had no control over it.

We have thus found from the facts in this case that the plaintiff has failed to show that the county is entitled to the property in controversy upon the ground that the money used in its acquisition was public funds belonging to the county.

We are not required in determining this case to account for the defalcation of Gerhart. It is, however, a matter of fair conjecture, to say the least, that it may be accounted for by the reckless management of the business of the office hereinbefore referred to. That he made loans of money, and in some instances in large amounts, is not disputed. At one time he loaned $4,000 to Abbott, Kinsley & Glick, which was not repaid for nearly four months, and the evidence of payment is a check upon a bank drawn payable to H. A. Gerhart. If this was county funds, the borrowers would be liable to the county upon the same principle that appellant insists the partnership of Gerhart & Co. is liable, because the money was not by the borrower placed in the vaults of the treasury, but paid to Gerhart personally. How much money Gerhart loaned, and how much of that he did loan was paid

back to him, how much he expended for political and electioneering purposes, and in extravagant outlays, will probably never be known.

II. Counsel for the respective parties have argued at length the legal propositions involved in the case, and cited many authorities. These questions are whether a county may maintain an action of this character, or whether its remedy is limited to an action upon the officer's bond. The statute of limitations is also claimed to be an effectual bar to the action, and it is claimed the county is estopped by the settlements by law required to be made by the board of supervisors with the treasurer.

We have not thought it necessary to determine these questions, because we believe the appellant has failed to establish by the evidence that the property in controversy was purchased with the public funds. Much of the evidence contained in the abstract is immaterial to the determination of the single proposition necessary to be established to maintain this action.

The question as to whether certain of the lands are partnership property, and whether Gerhart owned an interest in the property of the Gilman Land and Lot Company, we do not decide. In short, we determine nothing as to what is, or is not, partnership property, but leave that to be decided in an appropriate action, if that be necessary, to settle the partnership.

AFFIRMED.