# Richmond.

## NORFOLK AND WESTERN R. R. CO. v. GALLIHER.

### February 9th, 1893.

### Absent, *Richardson,* J.

1. CARRIERS—*Passenger.*—Every citizen is *prima facie* entitled to become a passenger on a railway train. Neither the purchase of a ticket nor the entry into a car is essential to create the relation of carrier and passenger. Where a person enters the ticket-office of a railroad company, to buy a ticket, he is entitled to protection as a passenger, though the agent refused to sell him the ticket.

2. IDEM—*Assault by employee.*—The mayor of a city is not authorized by law to appoint a special policeman for a railroad company. A night-watchman, in the employ and pay of the company, was sworn in by the mayor, at company's request. He arrested and imprisoned the plaintiff, though possessed of no authority to make arrests as an officer. In so doing, however, he acted within the scope of his employment, and the arrest of the plaintiff was authorized and ratified by the company. In an action against the company for damages for arrest and imprisonment—

HELD:

The plaintiff was entitled to recover.

Error to judgment of corporation court of city of Bristol, rendered at July term, 1891, in an action for unlawful arrest and imprisonment, wherein the defendant in error, C. G. Galliher, was plaintiff, and the Norfolk and Western Railroad Company was defendant. The jury rendered a verdict in favor of plaintiff for $650 damages. There was a motion to set the verdict aside and grant a new trial, upon the ground that the verdict is contrary to the law and the evidence. This motion the court overruled, and entered judgment upon the verdict. Upon the trial of the case the

court gave instructions, to the giving of which the defendant objected and duly excepted. The evidence is certified by the court, and not the facts. Opinion states the case.

*G. W. Ward* and *A. H. Blanchard*, for plaintiff in error.

*Fulkerson, Page & Hurt*, for defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

From the testimony of the defendant in error it appears that the plaintiff, C. G. Galliher, seventy years of age, who resided near Abingdon, in Washington county, Virginia, was in Bristol on the 16th day of December, 1890, and, a few moments before the mid-day departure of the train of the Norfolk and Western railroad for Bristol, he went to the passenger station of the said company at Bristol, and applied at the window of the ticket-office for a ticket to Abingdon, near his home. To this application he received the reply, "We are out of tickets"; to which he said, "What is the cause of that, baby?" The ticket agent threatened to have him arrested, and refused to sell him a ticket (on the ground, as the said agent testifies, that he was drunk; but the testimony of the said Galliher is that he was not drunk—and the jury believed his statement); instantly whereupon one John Sharratt, who was employed by the defendant company as a night-watchman or policeman, rudely seized him and wheeled him around violently, and pulled him down off the platform and across a bridge, and forced him through the streets of Bristol and the snow, twelve inches deep, and roughly forced him into a filthy and stinking calaboose, where (after pulling and jerking him around till they dislocated his shoulder and skinned his knee, they threw him down and took from his person his money, knife, and flask of whiskey, which he had purchased for his

wife for medicinal purposes) he was locked up, without a place to sit down, and without a fire, and kept imprisoned there for two or three hours, until after dark. He expostulated: "Gentlemen, I have done nothing. You had no right to put me in this calaboose. I have done no wrong." In his testimony he says: "They shut the door and left me in there. I got so cold I couldn't stand it. I stayed there and no fire, and had no place to sit down, and just stood there shivering, and no place to rest, and stood up against the wall—I got in the corner and leant myself, I got so weak (I had been on my feet for six hours). I said I would give what little money I had to see Col. Fulkerson. I couldn't see none of my family and children, and kept sinking down. Some one came in there, and I said: 'Please go and tell Col. Fulkerson to come here, and I will give you $10.' The fellow in there said, 'I will take you up there for $4.' I said, 'What right have you to take me out of here?' He said, 'I will take you out for $4.' I have suffered ten thousand deaths since this thing occurred. I came down to Bristol to get some Christmas tricks. I have been in this town 300 times, and nobody can say I ever did anything wrong. Sam Weller came there and got me out. He said there was $4 to pay, and he would see it paid. I said that 'the $4 for what—that they never gave me any trial; that I supposed that they charged me the $4 because I didn't die.'"

Sharratt was night-watchman for, and in the employment and the pay of, the Norfolk and Western Railroad Company when he made the arrest and imprisonment of the defendant in error, and had been substituted, as such, in the place of their watchman, Hunter Price, by the consent and authority of Capt. Barns and Mr. Bunting, who was general agent for the defendant company.

John Sharratt testified: "I arrested him." And in answer to the question: "What were you doing at that time? In

what capacity did you arrest him? What were you?" he answered: "I was working for the Norfolk and Western railroad." And William A. Rader, the mayor of the town, answered to the question: "Did he [John Sharratt] ever hold any position under you?" "None as an officer of the town. He was sworn in by me as policeman for the Norfolk and Western Railroad Company, at their request."

The appointment of police agents by railroad companies is fixed by the Code of Virginia 1887, section 1230. John Sharratt, who made this arrest and imprisonment, was not appointed under or according to this statute, nor under any law whatever authorizing the mayor of the town to appoint special police *for a railroad ;* and the mayor (Rader), who swore John Sharratt as a special police for the defendant company, and by their request, disclaims having done so under or by virtue of any authority. John Sharratt was employed and paid by the defendant company, acted within the scope of his employment, and the arrest of the defendant in error was antecedently authorized and ratified by the company, whose servant John Sharratt was at the time and in the act of making the arrest and imprisonment. The mayor of the city of Bristol was not authorized by law to appoint a special policeman for the defendant company ; and the mere fact of his being so sworn, at the request of the company or its agents, gave to the said John Sharratt no authority as a special policeman under the law; and in making the arrest and imprisonment of the defendant in error he acted without the authority of an officer of the law, and simply as the employee and servant of the defendant company, whose *watchman* he was at the time and in the act, in the stead of their watchman, Price, for whom he had been substituted by the consent and direction of the regular agent of the company. And even though the evidence proved (as it does not, but expressly the contrary) that the defendant in error was at the depot or ticket-office of the com-

pany, and was violating its rules and regulations, the said defendant company could not enforce its rules and regulations by the arrest and imprisonment of the defendant in error, without express authority of law.

The declaration was demurred to, on the ground that the declaration does not allege that the plaintiff was entitled to become a passenger. This was properly overruled by the court. It is the existing privilege and lawful right of every citizen, *prima facie*, to become a passenger; and the actual purchase of a ticket, nor the entry into the car, is not essential to create the relation of carrier and passenger. The declaration alleges that the plaintiff presented himself at the window of the ticket-office, at the scheduled time of the train departure of the defendant company, and in good faith asked to buy and pay for a ticket to Abingdon (his home); and he was entitled to the courtesy and protection due to a passenger from the moment he entered upon the premises of the defendant company. A common carrier cannot assault and imprison a person offering to buy a ticket, and then claim immunity for the outrage because their agents or employees refused to sell him a ticket, or prevented him from obtaining one. Patterson's Railway Ac. Law, sec. 219, and note on p. 214; 16 Amer. and Eng. Rd. Cases, 334 and 63–64, and cases cited.

The instructions given by the court correctly expound the law as applicable to the facts; and the verdict of the jury is plainly right upon the evidence certified. The damages given by the jury for the indignities, injuries, and suffering inflicted upon the aged plaintiff, by the agents and employees of the defendant company, are moderate and mild; and the judgment of this court is to affirm the judgment of the trial court under review.

LACY, J., and HINTON, J., *dissented.*

JUDGMENT AFFIRMED.

This case was decided February 9th, 1893, by an evenly-divided court, in the absence of Judge Richardson, by reason of illness; but, upon consideration of the petition for a re-hearing, Judge Richardson concurring in the foregoing opinion, it is now handed down as the opinion of the court.

JUDGMENT AFFIRMED.