TEXAS MIDLAND RAILROAD COMPANY v. F. A. GERALDON.

No. 2026.  Decided May 25, 1910.

1.—Enforcement of Legal Right—Ejecting Trespasser.

The enforcement of a legal right, such as that of putting a trespasser off one's premises, may be rendered unlawful and actionable by circumstances, as where the person ejected is exposed thereby to such danger to life or health as to demand that the right be not insisted on at the time.  (P. 404, 405.)

2.—Same—Railway—Passenger—Waiting Rcom.

In a case where a family arriving at a small station too late to take a train, there being no other till the following day, were received into the waiting room of the station, but, at the time for closing same for the night, were required by the station agent to vacate same during a storm, over the protest of the husband that his wife was "in no condition to go out in the rain," the evidence, in an action against the railway for injuries resulting to her from such exposure, is held to justify a submission to the jury of the question whether the act of the agent was wrongful under such circumstances and the refusal of a peremptory instruction to find for defendant.  (Pp. 403–406.)

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Hunt County.

Geraldon sued the railway company and recovered judgment.  Defendant appealed, and on affirmance obtained writ of error.  The case on appeal is reported in 54 Texas Civil App., 71.

*Ogden, Brooks & Napier* and *A. H. Dashiell,* for plaintiff in error. —The plaintiff and his wife were not passengers, and the defendant had a right to close its depot and require them to leave the same, and was not liable to them for any injury that might have been sustained by getting wet by reason thereof.  Texas Midland Ry. v. Griggs, 106 S. W., 411; International & G. N. Ry. v. Pevy, 30 Texas Civ. App., 460; Illinois Cent. Ry. v. Laloge, 69 S. W. (Ky.), 795; Phillips v. Southern Ry., 45 L. R. A., 163; Revised Statutes, art. 4521.

*Looney & Clark* and *Mulkey & Hamilton,* for defendant in error.— The right to expel even a trespasser from the carrier's vehicle or premises must be exercised with ordinary care and with due regard for the welfare and safety of the person ejected, and not at a time or place which will endanger the safety of such person or expose him to peril.  4 Elliott on Railroads, sec. 1637, p. 2575; Texas & P. Ry. Co. v. McDonald, 2 App. C. C., sec. 164; 6 Cyc., 563, 559; Gulf, C. & S. F. R. Co. v. Kirkbride, 79 Texas, 457; Fagg's Adm'r v. Louisville & N. R. Co., 63 S. W., 580 (Ky.); Louisville & N. R. Co. v. Ellis, Adm'x, 30 S. W., 979 (Ky.); Louisville, C. & L. R. Co. v. Sullivan, 81 Ky., 624, 50 Am. Rep., 186; Houston & T. C. R. Co. v. Berry, 84 S. W., 258; Bohannon v. Southern Ry. Co., 65 S. W., 169 (Ky.); Lake Shore & M. S. R. Co. v. Rozenzweig, 113 Pa. St., 519; Young v. Texas & P. Ry. (La.), 25 So., 69; Haug v. G. N. R. Co. (N. D.), 77 N. W., 101; Eidson v. So. Ry. Co., 23 So., 369; Kline v. Central Pac. Ry. Co., 99 Am. Dec., 282; Hudson v. Lynn & B. R. Co., 59 N. E., 647; Louisville & N. R. Co. v. Johnson (Ala.), 31 L. R. A., 372.

MR. JUSTICE BROWN delivered the opinion of the court.

The defendant in error with his wife and child, accompanied by another man and his wife not necessary to be mentioned hereafter, went to Enloe, a small village in Delta County, on plaintiff in error's road, for the purpose to take the train on that road to the town of Commerce. They arrived at Enloe between five and six o'clock in the afternoon, but the train on which they expected to take passage had already passed and defendant in error placed his wife and child in the depot and went out upon the platform of the depot building and went to work boxing his goods in order to have them ready for shipment on the next train, which would pass the station about five o'clock the next morning. After the goods were boxed, about nine o'clock that night, defendant in error and the other members of the party concluded to remain in the depot until the train should arrive the next morning. The defendant's agent had seen them in and about the waiting-room of the depot that afternoon and evening, but no objection was made to their remaining therein. About ten o'clock that night a train passed on defendant's road, going in the opposite direction to that which the party wished to go, after which the agent came into the room and spoke to them, asking, "Where are you folks going?" to which defendant in error replied that they were going to Commerce, whereupon the agent said in a rough manner, "Well, you will have to get out for I am going to close up this house." It was then raining and defendant in error said to the agent that he did not want to go out into the rain, that his wife was "in no condition to go out into the rain," to which the agent replied, "Well, you will have to go out all the same." Geraldon replied, "Well, you will have to put me out;" whereupon the agent called to the marshal of the town, who was standing nearby, and told him to put them out of the depot. This alarmed Mrs. Geraldon and she became excited, and defendant in error said, "Before I will be arrested I will go out," and he with his wife and the other members of the party went to seek a lodging house, which they found at a distance variously estimated at from 150 to 300 yards from the station. It was raining at the time the party left the station, so that by the time Mrs. Geraldon reached the lodging house she was wet to the skin and had no clothes for a change. Her monthly sickness was on at the time and the wetting caused it to stop, which produced sickness and suffering on her part not necessary to be more particularly described.

On the next morning Geraldon, his wife, child and party returned to the depot for the purpose of taking the train to Commerce, and, having bought tickets of the agent of defendant in error, the party took their seats in the depot room to await the arrival of the train, after which an officer entered the room and approached the window at which the agent was standing and where he had sold the tickets, asking of the agent, "Which is the man that has the gun?" The agent pointed over to Geraldon and said, "There he sits over there," and the officer came over to where Geraldon was and asked him if he had a gun, to which Geraldon replied that he had not, and the officer said he would have to search him, and he did so, finding no

gun on his person, but a hammer with which he had boxed his goods the evening before. Persons who were present in the room laughed at Geraldon at being searched, which caused him mortification.

This suit was instituted by defendant in error in the District Court of Hunt County to recover damages for the injury to his wife, and also for the damage done himself and his wife by the mortification of being threatened with arrest and being searched for a gun the next morning. The case was tried before a jury and the trial court was requested by the defendant to give to the jury a charge which practically directed them to return a verdict for the defendant. The court refused to give the charge, which is assigned as error in this court.

The plaintiff in error having prepared a waiting-room in its depot building at Enloe for persons desiring to take passage on the train, Geraldon and his wife, who entered that waiting-room, were not trespassers; they came with the purpose of taking passage on one of the defendant's trains, and, being late, they had the right to remain in the waiting-room until the next train should arrive upon which they could go to the place of their destination, subject, however, to the right of the railroad company to close its building at such hour as its reasonable rules might require. The agent of the railroad company had the lawful right to close the waiting-room and to require the occupants of it to retire at the hour shown by the testimony. But in executing the orders and the rules of the company the agent was required to use ordinary care to not place any occupant of the said room in a position which would probably endanger health or life.

We must assume in deference to the verdict of the jury that the agent of the railroad company knew that the condition of Mrs. Geraldon was such that for her to go out into the rain at night would endanger her health, and we must assume that it was raining to that extent that made it reasonably certain to the agent that injury to her health might result from putting her out of the depot into such a rain as was then falling. Under such circumstances it was not lawful for the agent of the railroad company to force Mrs. Geraldon out of the room and into the rain whereby her health might be impaired, and it appearing from the evidence that the agent of plaintiff in error having thus knowingly forced Mrs. Geraldon out of the room and into the rain, which caused her to suffer physical pain, the railroad company was properly held responsible for the results. Ploof v. Putnam, 71 Atl. R., 188; s. c., 75 Atl. R., 277; Texas & P. Ry. Co. v. Mother, 5 Texas Civ. App., 87; Johnson v. Chicago, R. I. & P. Ry. Co., 38 Ia., 348; Louisville & N. Ry. Co. v. Ellis, 97 Ky., 330; Louisville, C. & L. R. Co. v. Sullivan, 81 Ky., 624, 50 Am. R., 186; Weymire v. Wolfe, 52 Ia., 533.

The trial court did not err in submitting the issues involved in the above stated proposition to the jury upon the evidence before that court. It is claimed by the plaintiff in error that there was no evidence sufficient to notify the agent of the condition of Mrs. Geraldon. It was not necessary that he should know what was the particular disease with which she was then afflicted; it was sufficient to notify

a man of ordinary intelligence and ordinary prudence that the information given him with regard to her condition was such as to make it unsafe for her to be subjected to such weather as then prevailed. The information given was sufficient to convey such notice to the agent. It is known to all men of any experience and intelligence that women are almost universally subject to menstrual periods, and it is a matter of common knowledge that references to this delicate subject are usually vague insinuations.

The relative rights and duties of the railroad company and Geraldon and his wife on this occasion are analogous to those existing between persons improperly upon moving trains, when it becomes the duty of the conductor to remove them from the train. His right to remove them under such conditions is not questioned, but it is beyond all controversy his duty to see that he does not, in so doing, expose the persons to danger of health or of life, either on account of the character of the place at which he may expel them from the train, or in the conditions that surround them as to the weather, or other facts which would make it dangerous for such persons to be so left. We deem it unnecessary to comment upon the different cases cited as authority herein. We call attention, however, to the case of Weymire v. Wolfe, cited above. In that case Wolfe was the keeper of a saloon at which one Dunn was in the habit of drinking and becoming intoxicated. On the occasion in question the weather was inclement, and Dunn, having become intoxicated, remained in the building until a late hour at night. He was intoxicated to such degree as to be incapable of taking care of himself or of being conscious of danger. At a late hour in the night Wolfe expelled Dunn from his saloon building, exposing him to inclement weather in his unconscious and helpless condition, from the effects of which he died. The court held that Wolfe was liable for wrongfully expeling the man known to be incapable of taking care of himself and thus exposing him to the cold. The foundation of liability in such case is not a want of authority over one's premises, nor a want of authority to expel an intruder therefrom, but it rests upon the fact that the person expelled is known to be in a condition which renders him incapable of taking measures for his own safety. Common humanity forbids that one should, under such conditions, exercise a legal right so as to produce serious injury to a fellowman. Geraldon and his wife only wished the agent to permit them to remain until the rain should cease, which, in all probability, would have been but a short time. They had been invited by the railroad company to enter the room and were there to secure passage upon the company's train for which they must wait; that room was provided for such conditions. The evidence justifies a conclusion that the agent acted arbitrarily in ejecting Mrs. Geraldon. There are many cases in which the right of the railroad company to expel trespassers from its trains have been passed upon and uniformly it has been held that such right must be exercised with due regard to safety of life and health of the person to be removed, whether he be an actual trespasser, or whether he be one who has been misled into his attitude towards the company. If the facts testified to by the witnesses be true they presented such conditions as called for the

exercise of ordinary care on the part of the agent towards Geraldon and his wife, and if the evidence of the witnesses be true, it is unquestionably a fact that the agent did not conduct himself as a man of ordinary prudence would under similar circumstances.

In the course of human events conditions arise which require that one shall forbear to exact an observance of his legal rights and which will justify the other party in disregarding such right to prevent injury to health or the loss of life. This proposition is well illustrated by the facts and decision of the court in Ploof v. Putnam, 71 Atl. Rep., 188, by the Supreme Court of Vermont. Putnam owned an island in Lake Champlain with a dock for mooring his boats. He instructed his servant in charge to prevent any other person to moor a boat at the dock. Ploof was on the lake in a boat with his wife and child. A storm arose, and in the fear of loss of his boat and the lives of his wife and child, Ploof ran his boat to the dock and fastened it to Putnam's mooring. The servant loosed Ploof's boat whereby it was put at the mercy of the storm and was driven ashore, from which the damage ensued. The Supreme Court of Vermont assumed that Putnam had a right to the exclusive use of his dock, and said: "There are many cases in the books which hold that necessity, and an inability to control movements inaugurated in the proper exercise of a strict right, will justify entries upon land and interferences with personal property that would otherwise have been trespasses. . . . This doctrine of necessity applies with special force to the preservation of human life. One assaulted and in peril of his life may run through the close of another to escape from his assailant. 37 Hen. VII, Pl., 26. One may sacrifice the personal property of another to save his life or the lives of his fellows."

The agent of the railroad company had no right to eject plaintiff's wife from the waiting-room of the station under the circumstances.

We have examined all assignments of error and find no reason for disturbing the judgment of the District Court. It is ordered that the judgments of the District Court and Court of Civil Appeals be affirmed.

*Affirmed.*