# Waldrop *v.* Nashville, Chattanooga & St. Louis Railway.

## *Injury to Passenger.*

(Decided May 15, 1913.   Rehearing denied June 19, 1913.
62 South. 769.)

1. *Carriers; Passengers; Relation; Termination.*—Although a carrier was not legally required to maintain a waiting room at that particular station under section 5489, Code 1907, yet, where the railroad company had built a station and a waiting room at such point it could not arbitrarily deny the use thereof to a particular passenger.

2. *Same.*—In the case of steam railways the relation of carrier and passenger does not terminate at the moment the passenger alights at the station, but continues until the passenger has had a reasonable opportunity to leave the premises of the carrier in a proper manner and by the usual way.

3. *Same.*—The relation of carrier and passenger is a contractual one, requiring the carrier merely to carry the passenger between the agreed points; but the law raises the duty of the carrier to care for its passenger's comfort and safety so long as the relation continues.

4. *Same.*—Where a person goes to a railroad station with an intention in good faith to take passage upon the train, the carrier must provide him or her with a safe way of ingress and egress to and from the cars, and with a reasonably safe waiting place.

5. *Same; Destination.*—A carrier performs its whole duty by conveying the passenger safely to his destination, in the absence of special circumstances, and is under no duty to care for the passenger while preparing to further continue his journey.

6. *Same.*—If, upon reaching the depot at his destination, the passenger's condition is such that to at once leave the waiting room would be dangerous to his health and safety, he must be given reasonable opportunity to further safely continue his journey, or obtain assistance, and cannot be summarily ejected from the depot.

7. *Same.*—The facts considered as stated and held to render defendant liable for injuries resulting to plaintiff from her expulsion from the depot.

APPEAL from Etowah Circuit Court.

Heard before Hon. JAMES E. BLACKWOOD.

Action by Carrie Waldrop against the Nashville, Chattanooga & St. Louis Railway.   From a judgment for de-

fendant on demurrer to the complaint, plaintiff appeals. Reversed and remanded.

Count 6 is as follows: "Plaintiff claims of defendant, a corporation, the sum of $10,000 as damages, and avers, to wit, that on the 26th day of December, 1911, the defendant was a common carrier of passengers operating a steam railway between and through the towns of Albertville, Ala., and Attalla, Ala.; that Albertville, Ala., was and is a town of over 1,000 inhabitants; that on said date the defendant maintained in said town of Albertville a depot, which was used by all passengers to and from that point, and at which defendant's trains carrying passengers stopped for the purpose of receiving and discharging passengers; that the defendant maintained what was known as a waiting room in said depot, which was, at the time and had been for some time before, held opened by defendant for and was customarily used by passengers discharged from defendant's trains at that point, to protect them in the case of inclement weather until they had a reasonable time to leave same safely. Plaintiff avers that on said date she became a passenger on one of defendant's trains at Attalla, Ala., paying her fare to Albertville, Ala.; that when defendant's train on which plaintiff was a passenger reached Albertville, in the morning about one or two hours before noon, the weather was extremely cold, the wind blowing at a high rate of speed, and the rain falling very heavily, which condition continued for several hours; that plaintiff entered said waiting room from the defendant's train, the defendant then and there holding the same open, as was customary, for the use and protection of its passengers discharged at that point. Plaintiff further avers that as soon as the train reached said depot, she sent for the conveyance which was to carry her away from said depot,

and which was arranged to protect her and her children, who were with her, from exposure to the extremely severe weather; that it would have taken but a few minutes for said conveyance to reach said depot. Plaintiff avers that defendant's servant or agent in charge of said depot would not allow plaintiff to remain in said waiting room till said conveyance could reach there, and would not give her a reasonable time to arrange to depart therefrom without danger to her health and that of her children, but knowing the condition of the weather, knowing to make her leave said waiting room necessitated her being exposed to the weather, knowing it was highly dangerous to her health, and perhaps placed her in imminent peril of losing her life from sickness contracted thereby, yet with a reckless disregard of the necessarily dangerous and injurious consequences to plaintiff, said agent or servant of defendant, acting within the scope of his authority as such agent or servant, willfully caused plaintiff to leave said waiting room and become exposed to the cold, rain, and wind, and as a proximate consequence of said agent's act plaintiff was caused to become cold, wet, and uncomfortable, became very sick, and was caused to suffer much physically and mentally, and had her health permanently impaired, all to the damage of plaintiff as aforesaid."

The other counts are based on the same state of facts, but are wanting in several of the averments found in count 6.

Demurrers raise the questions discussed in the opinion.

McCORD & DAVIS, and J. E. JOHNSON, for appellant. The case comes up squarely on the pleading, and it is insisted under the following authorities that the counts

were not subject to the demurrers interposed, and that the court therefore erred in sustaining the demurrers. —*So. Ry. v. Nelson,* 41 South. 1006; *Melton v. B. R. L. & P. Co.,* 45 South. 151; *A. G. S. v. Sellers,* 93 Ala. 9; 5 A. & E. Enc. of Law, 499; 83 S. W. 902. Although not required by section 5489, Code 1907, to erect a waiting room at this particular station, yet having erected it and used it for the purpose of those seeking passage on its trains, the railroad company could not deny its use to any particular passenger.—*L. & N. v. Kellar,* 47 S. W. 1072; 14 South. 49; 49 South. 376; 75 Ala. 604. Under the facts stated the case of wanton negligence was made out rendering the railroad company liable in damages for any injuries resulting to plaintiff from having been expelled from the station.—*M. & C. R. R. Co. v. Martin,* 117 Ala. 267; *L. & N. v. Brown,* 121 Ala. 221; *Peters v. So. Ry.,* 125 Ala. 537; *Montgomery St. Ry. v. Rice,* 144 Ala. 610; *Same v. Lewis,* 148 Ala. 134; *M. J. & K. C. Ry. Co. v. Smith,* 153 Ala. 127.

GOODHUE & BRINDLEY, and SPRAGINS & SPEAKE, for appellee. Under the principles decided in the cases of *N. C. & St. L. Ry. v. State,* 137 Ala. 439, and *Page v. L. & N.,* 129 Ala. 237, a cause of action is not presented in this character of pleading, unless the complaint showed that plaintiff was a passenger, that while a passenger plaintiff was deprived of some right to which she was entitled, and suffered injury therefrom, and that the railroad company operates through the corporate limits of an incorporated town or city of more than a thousand inhabitants.—Sec. 5489, Code 1907; *Melton v. B. R. L. & P. Co.,* 45 South. 151; 6 Cyc. 542. The true principle is expressed in the case of *Mont. St. Ry. v. Warren,* 133 Ala. 526; 39 Pa. S. C. 204; 69 L. R. A. 519; 17 L. R. A. (N. S.) 510; 33 Atl. 1076; 25 Cyc.

163.   It cannot be said that the complaint stated a good cause of action for willful or wanton wrong.—*B. R. & E. Co. v. Bowers,* 110 Ala. 328; *So. Ry. v. Bunt,* 131 Ala. 591; *C. of Ga. v. Freeman,* 134 Ala. 354; *A. G. S. v. Cardwell,* 172 Ala. 282; *Goodloe v. M. & C. R. R. Co.,* 107 Ala. 233.

SAYRE, J.—Section 5489 of the Code of 1907 makes it the duty of every person, company, or corporation, owning or operating any railroad through the corporate limits of any incorporated city or town of more than 1,000 inhabitants, to establish and maintain one or more depots for the accommodation of passengers and storage of freights.   This court held on good authority in the case of *Page v. L. & N. R. R. Co.,* 129 Ala. 232, 29 South. 676, that no such duty exists, unless imposed by the charter of the railroad company, or by statutory regulation, or by some other legislative authorization conferring power upon the Railroad Commission to impose the duty.

The complaint in this case seems to have been drawn with the idea that the section of the Code to which we have referred lay at the foundation of the cause of action the pleader was attempting to state.   But we think the statute has nothing to do with the case.   If defendant built a station house and waiting room at a place where it was not required, by the terms of the section or the mandate of the Railroad Commission, so to build, that fact evidenced sufficiently its appreciation of the reasonable needs of the traveling public at that point; and, as long as a waiting room is there kept and maintained, the railroad company will not be heard to say that its provision for the convenience of passengers is a mere gratuity which it may capriciously deny to any particular passenger.   Whether the waiting room at Albertville was provided in obedience to an express com-

mand of the law, or whether because defendant voluntarily recognized the reasonable needs of its passengers at that point, the question in either case is whether, in the other circumstances stated in the complaint, plaintiff had a right to stay in the waiting room.

As will be seen by reference to the complaint, plaintiff complains that, after she had traveled as a passenger on defendant's train, and after, so far as the operation of the train involved her safety, she had been safely deposited at her destination, she was denied the shelter of defendant's waiting room under circumstances which called, as any one would say, for the offices of good neighborhood at least. The question of judicial interest is whether, in view of the facts averred, defendant failed in any legal duty it owed plaintiff.

In the Cyclopedia of Law and Procedure a rule is stated as follows: After the passenger has departed from the car and has had reasonable time and opportunity to avoid further danger from the operation of the car, or further necessity of relations with the servants of the carrier, he ceases to be a passenger and stands toward the carrier as one of the general public." —6 Cyc. 542. Attention to the cases cited to the text will show that the rule was formulated with reference to street railroads which, as a general thing, deposit their passengers, not upon the carrier's property, but upon the public streets. The rule of this court in such cases may fall within the implications of the quoted text, but it may be well to say that our decisions hold that the duty of a street railway carrier is not performed when it lands its passenger at a time and at a place of such unknown environment to him that, in his first effort to depart after alighting, he walks into unknown danger.—*Montgomery St. Ry. Co. v. Mason,* 133 Ala. 508, 32 South. 261.

In the case of steam railways, which customarily land their passengers at appointed depots or station houses, and on their own premises, the rule is stated thus: "The relation of carrier and passenger does not cease at the moment the passenger alights from the carrier's vehicle, by its invitation, at a place selected by the carrier at the point of destination, but continues until the passenger has had a reasonable opportunity to leave the carrier's premises in the proper manner and by the route usual and proper in such cases."—5 Am. & Eng. 499. Virtually this statement of the law had the approval of this court in *Southern Railway v. Nelson*, 148 Ala. 90, 41 South. 1006, and in *Melton v. B. R. L. & P. Co.*, 153 Ala. 95, 45 South. 151, 16 L. R. A. (N. S.) 467, the last, however, being the case of a passenger on a street railway.

Most of the counts, all but the sixth and last, allege only that defendant's agent ordered and commanded plaintiff to quit the waiting room and defendant's premises "before she had reasonable time to proceed on her journey some distance out in the conutry," but what the pleader meant by "reasonable time" is made clear enough by the context, where the attendant circumstances are alleged. The gist of these counts is, not that plaintiff was denied the right and opportunity to depart, nor that there was an interference with her, nor any lack of due provision for her unless that is to be inferred from the facts stated, to wit, she was a woman, she was old, the weather was inclement, and she was not prepared to proceed upon her journey. These counts very clearly, though inferentially, reveal the pleader's opinion and conclusion that the special circumstances alleged, without more, clothed plaintiff with a right to stay for a length of time which, but for the special circumstances alleged, would have been unreasonable. De-

fendant's contention, on the other hand, seems to be that, since plaintiff was a departing passenger, its definite duty, after safely landing her, was only to afford her a way of departure, safe so far as concerned the condition of defendant's premises and the operation of its trains, and that her age and sex, and the inclemency of the weather into which she was made to go, had no effect by way of enlarging her correlative right, or, to state it with a nearer view to the precise issue raised by the facts alleged, it is that defendant was under no duty, notwithstanding the special circumstances alleged, to give plaintiff shelter while she made arrangement for the further prosecution of her journey away from defendant's depot.

Generally speaking, the relation of carrier and passenger has its origin in a contract by which the carrier assumes to do no more than to carry the passenger between agreed points, and we must assume that such was the case here. The duty to care for the passenger's comfort and safety is raised by law. It lasts only while the relation lasts. Universally it is held that if a person goes to the carrier's station at a reasonable time, with the bona fide intention to take passage, he thereby imposes upon the carrier the duty of providing for him a safe way of ingress to and egress from its cars and a safe waiting place.—*L. & N. R. R. Co. v. Glasgow,* 179 Ala. 151, 60 South. 103. In certain cases the statute to which we referred in the beginning makes it the duty of the carrier to establish and maintain depots for the accommodation of passengers, and the nature of the comforts and conveniences to be provided in connection with waiting rooms in all cases may be inferred from section 5484 of the Code. But the literal command of the last-mentioned section is that every railroad company shall, when required by the Railroad

Commission, provide waiting rooms "for passengers waiting for trains," and upon this language appellee seizes as indicative of the legislative understanding that waiting rooms are not required for the safety and convenience of departing passengers. And upon the language of this statute and, it would seem, upon the strict legal rights of the owners of private property, as against trespassers, the argument is, in short, that departing passengers need not be allowed to wait, but may be required to go.

We would say that appellee has correctly conceived its rights and duties in the ordinary case of a passenger who, having been landed at his destination, has nothing to do but to proceed upon his journey by other ways. In such case the carrier, in the absence of special conditions, to the statement of which we will shortly come, has discharged its full duty. It need have no concern about the passenger's further journey, and in consequence is under no legal duty to house the passenger while he makes preparation therefor. In the absence of actual notice to the contrary, the carrier may assume that the passenger has made his own preparations and is physically able to go. In such case the relation of carrier and passenger has ceased, and upon the carrier as such the law imposes no further obligation.

But it does not follow that occasions may not arise in which the carrier may owe a duty to one who lingers upon its premises. There is a law of necessity which operates for the conservation of human life and safety without regard to relations that may be established by contract. It may become necessary that one who has been a passenger shall stay in order to save himself from grievous bodily harm; and, in the determination of the carrier's duty to a person so circumstanced, it is

not unimportant to consider, as affecting the degree of care to be exercised, that in the beginning he was not a trespasser. In such a situation the carrier's duty to exercise care for the safety of such person is commonly recognized and placed by the courts on the ground of an inevasible legal duty which has regard, not for considerations merely sentimental or ethical, but for human life and safety. "There are many cases in the books which hold that necessity, and an inability to control movements inaugurated in the proper exercise of a strict right, will justify entries upon land and interferences with personal property that would otherwise have been trespasses."—*Ploof v. Putnam,* 81 Vt. 471, 71 Atl. 188, 20 L. R. A. (N. S.) 152, 130 Am. St. Rep. 1072, 15 Ann. Cas. 1151, where a number of examples may be seen. The doctrine of necessity applies with special force to the preservation of human life. This last manifestation of the doctrine has frequently appeared in cases involving the expulsion of persons improperly on moving trains. It is uniformly held that the right of the carrier to expel trespassers from its trains must be exercised with due regard for the safety, the life, and health of the person removed, and this, whether he be a bare trespasser, or was misled into his wrongful position.—*Texas Midland R. R. Co. v. Geraldon,* 103 Tex. 402, 128 S. W. 611, 29 L. R. A. (N. S.) 799; *Depue v. Flatau,* 100 Minn. 299, 111 N. W. 1, 8 L. R. A. (N. S.) 485; *Adams v. Chicago Great Western R. R. Co.* (Iowa) 135 N. W. 21, 42 L. R. A. (N. S.) 373. In the last case it was said that the foundation of liability in such case is not a want of authority over one's premises, nor a want of authority to expel an intruder, but it rests upon the fact that the person expelled is known to be in a condition which renders him incapable of taking measures for his own safety. It

results that, if a passenger falls sick or his condition is such that to go at once would endanger his health or safety, there is no rule of law which would justify his summary ejection. In such case he must have an opportunity to get help or make other provision for the further prosecution of his journey, and such opportunity cannot be limited to that reasonable time which a passenger has to leave the carrier's premises in the ordinary case. It must be reasonable in view of the unusual and unavoidable conditions and the probable consequences of an immediate eviction. And, we hardly need to say, the carrier must have actual notice of the conditions, and so of the probable consequences.

Referring to the several counts of the complaint, it will be seen that the other counts were bad, but that, while the pleader probably proceeded in part upon an erroneous theory of the law of his case, in the sixth count he stated a good case within the principles we have asserted, though incumbering his statement with irrelevant and unnecessary matter. The demurrer, therefore, as for any objection which it specified as to count six, should have been overruled.

Reversed and remanded.

McCLELLAN, MAYFIELD, and SOMERVILLE, JJ., concur. ANDERSON and DE GRAFFENRIED, JJ., concur in the reversal on count 6. DOWDELL, C. J., not sitting.