No. 19,742.

B. F. FENNELL and JOSIE FENNELL, *Appellants*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

ASSAULT — *In Passenger Depot — By Town Marshal — Damages — Liability of Railroad Company.* A colored man sixty-six years old and his wife went as passengers from Newton to Walton, arriving late in the afternoon. The testimony tended to show that they failed to find the man they went to see, and desired to remain in the depot until the train back to Newton, due in about an hour and a half, should come. The town marshal came in, looked at the plaintiffs, asked the ticket agent where they were going, and ordered them out, telling them they could not get a train till late the next morning and "they could make it back to Newton before that time." When they expressed a desire to get a ticket and remain in the depot he told them they could not stay there and he would lock them up if they went up town, and with some force ejected them from the depot, the agent being within sight and hearing and making no remonstrance but taking no part in the expulsion. Being thus compelled to walk back to Newton on a dark and inclement evening, they received injuries for which they sought to recover damages from the company, on the theory that it was the agent's duty to protect them from the actions of the officer. Assuming, without deciding, that the plaintiffs were entitled to the rights of passengers waiting in a depot to take a train, it is held that the defendant was not rendered liable for the mere noninterference with the officer by the ticket agent.

Appeal from Harvey district court; FRANK F. PRIGG, judge. Opinion filed June 10, 1916. Affirmed.

*A. J. Adams, Walter T. Matson,* and *J. J. Bulger,* all of Wichita, for the appellants.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the appellee.

The opinion of the court was delivered by

WEST, J.: This is an appeal from an order sustaining a demurrer to the plaintiffs' evidence in their two cases, which were submitted together. B. F. Fennell, a colored man sixty-six years old, with his wife, went as passengers from Newton to Walton, arriving there late in the afternoon. There was testimony to the effect that upon learning that the man they

Fennell v. Railway Co.

went to see was not there they concluded to take the first train back to Newton, that the marshal of the town of Walton came into the front door, looked at the plaintiffs, then went to the door of the ticket office and said to the ticket agent, "Where is them coons going?" to which the ticket agent replied, "I don't know"; that the officer and the agent stepped back farther from the window and had a conversation, and the officer came back and said to Fennell, "You'll get no train out of here until late to-morrow morning, and you can make it back to Newton before that time." Fennell said, "Well, we will have to wait for it," but was told by the officer that he could not wait there; and upon Fennell replying that he would pur‑ chase his ticket, said, "Well, you have not got any ticket and you can't stay here." That the officer got angry with him and put him out of the depot, saying, "I don't want you here or none of your kind," and said to his wife, "You get on out too, I'll lock both of you up"; and he shoved Fennell along to the rear end of the platform and pushed him off, saying, "Make it on out of here. If you go up to that town I will lock up both of you"; that while this was occurring Fennell said, "Let me get my ticket," and the ticket agent was then standing with his elbow on the counter where he issued tickets, looking into the waiting room; that the ticket agent made no effort to pre‑ vent the assault and said nothing to the officer.

In the opening statement counsel said that there was a train for Newton due an hour and a half later, and there was testi‑ mony that when plaintiffs had gone two and a half or three miles from Walton a train called the local passed them on its way to Newton. It was a peculiar situation. The officer would not permit them to go up town; he would not let them stay in the depot, but forced them to start out afoot. No claim is made that they were committing any offense or that the mar‑ shal had any sort of warrant or authority for his conduct, unless it were his suspicion that they were disreputable char‑ acters. It was agreed that a certain witness, if present, would testify that it was the custom of this individual to run all the colored people out of town, and out of the depot without re‑ monstrance on the part of the agent, but the trial court deemed this incompetent.

Fennell v. Railway Co.

The position of the defendant is, that as the plaintiffs did not buy tickets and the agent had no knowledge that they were there for any purpose except to loiter, he was under no obligation to furnish them lodgings nor required to interfere with the officer in what he deemed the discharge of his duties. In the brief it is said:

"In the case at bar, it seems quite evident that the city marshal told the ticket agent that the plaintiffs were disreputable or suspicious characters, and that the agent thought the marshal quite justified in driving them out of own. In any event, it was not the agent's business to interfere in the matter, and it is absurd to attempt to hold the railway company liable for the agent's passivity."

No authorities are cited in support of this contention.

A considerable research has failed to disclose any case exactly similar, and but few bearing any analogy to the one under consideration have been cited or found. In one case the tenant of a union depot company violently assaulted a passenger, and it was shown that his employer had known for years that he was a savage and vicious man, inclined to make assaults, and the company was held liable. (*Dean v. St. Paul Union Depot Company*, 41 Minn. 360, 5 L. R. A. 442.) In another it was ruled that when a person enters the office of a railroad depot to buy a ticket he is entitled to protection as a passenger even though the agent refuses to sell him a ticket; that a night watchman under the employ and pay of the company, although sworn in as a special policeman by the city marshal without authority at the request of the company, rendered the company liable by the assault and false imprisonment of a passenger. (*Norfolk and Western R. R. Co. v. Galliher*, 89 Va. 639, 16 S. E. 935.) In *Batton & Wife v. South & North Ala. Railroad Co.*, 77 Ala. 591, it was held the duty of a railroad company to protect its passengers from violence or disorderly conduct, but that no liability would arise by such conduct on the part of two or three intruders coming into the waiting room while the plaintiff was waiting the arrival of her train, it not being shown that the company had notice of any facts which justified the expectation of such an outrage. The opinion approves the quoted doctrine that " 'while not required to furnish a police force sufficient to overcome all force, when unexpectedly and suddenly offered, it is his duty to provide ready help, sufficient

Fennell v. Railway Co.

to protect the passenger from assaults from every quarter which might reasonably be expected to occur, under the circumstances of the case and the condition of the parties.' " (p. 593.)    Also, that the measure of duty in stations is not so great as it is after a passenger has boarded the train.

"We do not think that there is any duty to police station-houses, with the view of anticipating violence to passengers, which there are no reasonable grounds to expect. . . .    There is nothing tending to prove that the company had notice of any facts which justified the expectation of such a wanton and unusual outrage to passengers. . . .    It is shown neither to be commonly necessary or customary."   (pp. 593, 594.)

In *Duggan, Appellant, v. B. & O. R. R.*, 159 Pa. St. 248, 28 Atl. 186, 39 Am. St. Rep. 672, it was held that a conductor is not required to enter into a contest with or put himself in opposition to officers of the law who arrest a passenger, and whether the conductor's conduct in that instance was such as to render the company liable was said to be a question for the jury. In *Krantz v. R. G. W. Ry. Co.*, 12 Utah, 104, 41 Pac. 717, 30 L. R. A. 297, a passenger alighted from a train at a small station and started towards the section house, and being taken for a spotter, was assaulted by the section foreman who gave him five minutes to get away under threat of death.   The ticket agent was present and saw the assault and saw the parties go back into the waiting room.   Plaintiff, being afraid to stay, started up the track and was assaulted and robbed by two tramps, whereupon he returned to the station house and complained to the ticket agent and wanted to send a telegram giving information of the robbery.   The section foreman interfered and directed the ticket agent not to send the telegram, and with the two tramps came into the station and brutally beat the plaintiff, who appealed to the agent and the bystanders for assistance, to which none except a stranger responded, the ticket agent merely ordering them all out of the waiting room. He testified that though the foreman was subject to his orders in the station house he would not obey him because they were not on good terms.   It was held that for the assault outside the station house the company was not liable, but was for that within the building.   Although not regarding the plaintiff as a passenger, the court said:

"When the appellant was assaulted and beaten in the waiting room of the station, the company itself was present, in the person of the ticket agent in charge, who was its vice-principal, and the injuries in-

flicted upon the appellant by one servant of a company, aided by strangers, in the presence of and under the very eye of the vice-principal, who tamely acquiesced, and failed to exercise his authority for the protection of the appellant, were inflicted by the company itself. The agent should have protected appellant, or, at least, should have made an earnest effort to do so." (p. 117.)

In *Southern Railway Company v. Hanby,* 183 Ala. 255, 62 South. 871, it was charged that while waiting in the station for the purpose of taking passage the plaintiff was assaulted and beaten, and that the company failed to protect him from such violence. It was ruled that in case of lawless violence of a stranger the duty of protection does not arise until the carrier has reasonable grounds for believing that such violence or assault will occur unless steps are taken to prevent it. "When *that* occurs *then* the carrier or innkeeper must at once take all such reasonable steps as the circumstances will admit of to prevent the threatened injury or insult, and if he fails to do so, *then* he is liable in damages for the consequences." (p. 260.) In *Bowden v. Railroad,* 144 N. Car. 28, 56 S. E. 558, 12 Ann. Cas. 783, it was decided that the railroad company is not liable when the neglect consists only in the failure of the conductor to resist known officers of the law in carrying out their purpose to arrest a passenger and in delaying the train at a station a few minutes longer than usual while the arrest is being effected. In a Note in 12 Ann. Cas. 785, the following quotation is found:

"If the conductor had knowledge that the arrest was unlawful, then it would be his duty to use extraordinary diligence to prevent it and protect the passenger, but even in that case the company would not be an insurer against such arrest. If the conductor had notice that the arrest was wrongful, it would be his duty to make inquiry into the matter. But where the arrest is by officers of the law and is apparently regular and there is nothing to put the company on notice that the arrest is illegal, the company can not be held liable for a failure to interfere with the officers and prevent the arrest."

Cyc. lays down the rule that when a person is upon the depot premises upon the express or implied invitation of the company reasonable care should be used for his safety. (33 Cyc. 805.) In a Note, 40 L. R. A., n. s., at page 1073, the rule deduced from a large number of decisions cited is that:

"In respect of arrests made by officers of the law, a passenger cannot recover damages unless he can prove that the carrier's servants were

guilty of some positive misconduct with relation to the tort. It has been laid down that such misconduct may be inferred where the servants had notice, actual or constructive, of the illegality of his arrest, and failed to take such measures as were requisite for his protection."

In *Texas Midland R. R. Co. v. Geraldon,* 103 Tex. 402, 128 S. W. 611, 29 L. R. A., n. s., 799, it appeared that a man with his wife and child went to a small village to take a train, and finding that it had gone he left his wife and child in the depot and went out upon the platform to box his goods to ship on the next train. No objection to their presence was made until ten o'clock at night, when they were ordered out by the agent who said he was going to close up. The husband remonstrated that the wife was not in condition on account of her health to go into the rain which was falling, whereupon the agent called upon the town marshal to put them out of the depot, and in seeking a lodging house the wife was drenched, causing injury. It was held that the company having prepared a waiting room for persons desiring to take passage the plaintiff and his wife were not trespassers but had a right to remain in the waiting room until the next train on which they could go, subject to the right of the company to close its building at such hours as reasonable rules require, but that the agent was required to use care not to place an occupant in a position which would probably endanger health and life. The court said:

"Under such circumstances it was not lawful for the agent of the railroad company to force Mrs. Geraldon out of the room and into the rain whereby her health might be impaired, and it appearing from the evidence that the agent of plaintiff in error having thus knowingly forced Mrs. Geraldon out of the room and into the rain, which caused her to suffer physical pain, the railroad company was properly held responsible for the results." (p. 404.)

The eighth circuit court of appeals in *Thomkins v. Missouri, K. & T. Ry. Co.,* 128 C. C. A. 1, 211 Fed. 391, 52 L. R. A., n. s., 791, in a case involving the arrest of a colored interstate passenger because in a car set apart for white persons, held that it was the duty of the Pullman conductor to exercise reasonable care and diligence to protect passengers, but that its employees were not required to substitute their opinions of the law and of the duty of officers of the law for the judgment of the latter and to interfere with and obstruct the discharge by the officers of their duties, and that their failure so to do did not constitute actionable negligence.

This is not the case of an assault by a servant of the company or by a stranger as a private citizen. It is, according to the plaintiffs' evidence, an instance of a rough and arbitrary expulsion by a star-adorned dignitary who overruled the defendant's time table and took charge of its station to the extent of forcing the plaintiffs to start on foot for the point whence they had come, and whither they desired to return as passengers on board one of the company's trains. It may be fairly inferred from the evidence that the agent heard Fennell tell the marshal he wanted to buy a ticket and knew there would be a train along in about an hour and a half. But assuming, without deciding, that the plaintiffs were entitled to the protection of passengers waiting in the depot to take a train, we find no sufficient basis in reason or in precedent for holding that it was the duty of the agent to venture upon any dictation to or interference with one so distended with his little brief authority as was the star actor in this scene of expulsion.

The trial court's ruling is affirmed.