FAULKNER, Justice.
McElroy brought suit for injuries received when he was struck by a hit and run driver after deboarding defendants’ bus and leaving their premises. The trial court granted a summary judgment for the defendants. We affirm.
McElroy was a passenger-for-hire on defendants’ Trailways bus from Huntsville to Sheffield. Defendant Hughey, the original bus driver, testified in his deposition that when McElroy first boarded the bus in Huntsville he could smell “a little” alcohol on him, although McElroy did not appear drunk. Hughey was relieved in Florence by another driver, defendant Bradley, who was not informed that McElroy had been drink *956 ing. Bradley stated that before departing he checked the passengers and noticed that McElroy was asleep. McElroy did not create a disturbance at any time during the trip, nor did he do anything to draw particular attention to himself. Upon arrival in Sheffield, McElroy deboarded at the bus station which was closed at that time. He apparently staggered slightly as he exited the bus but did not require assistance. He then crossed the highway and entered a fruit stand. As the bus prepared to leave, McElroy, who had recrossed the highway, rapped on the door, entered, and retrieved his forgotten duffel bag. While crossing the highway the third time McElroy was struck by a hit and run driver.
McElroy’s original complaint alleged that McElroy was intoxicated but that defendants’ common carriers, with actual or constructive knowledge of his intoxication, negligently and/or wantonly discharged him from the bus without any assistance so that he was immediately run over. A second count sought recovery under Trailways’ uninsured motorist coverage. Defendants moved for summary judgment based on the pleadings and the depositions of McElroy, Hughey, and Bradley. McEl-roy then amended his complaint to allege that defendants failed to provide a safe place to discharge him and breached an implied contract in fact to transport and discharge him safely. Summary judgment was subsequently granted for defendants on all counts.
In this state the duty of a common carrier to deboarding passengers is as follows: “It is the duty of common carriers of passengers ... to exercise the highest degree of care in providing reasonably safe and convenient places for the disembarkation of their passengers.” Alabama Power Co. v. Hall, 212 Ala. 638, 103 So. 867 (1925); Mobile Light and R. R. v. Therrell, 205 Ala. 553, 88 So. 677 (1921). “The relation of carrier and passenger does not cease at the moment the passenger alights from the carrier’s vehicle, by its invitation, at a place selected by the carrier at the point of destination, but continues until the passenger has had a reasonable opportunity to leave the carrier’s premises in the proper manner and by the route usual and proper in such cases.” Waldrop v. Nashville, C. & St. L. Ry., 183 Ala. 226, 62 So. 769 (1913). “If afterwards the passenger walks into danger or harm overtakes him by reason of the intervention of an independent agent the carrier cannot be held for that.” Hammett v. Birmingham Ry., Light & Power Co., 202 Ala. 520, 81 So. 22 (1918).
Plaintiff asserts that the bus station in Sheffield was not a reasonably safe place for McElroy to disembark since it was closed at the time, thereby forcing McElroy to cross the highway if he wished to call for a ride. It is clear, however, that a common carrier such as a bus company has no duty to provide its passengers with full-scale 24 hour depot service. It may, in fact, deposit passengers along the roadside, provided it is in a reasonably safe place. See Hall, supra; Therrell, supra. This is a frequent and desirable practice in rural areas. Nothing indicated that defendants’ depot was itself unsafe, other than the fact that it was closed, and that fact alone is not enough to impose liability in this state. It is equally apparent from the cases quoted above that defendants were no longer responsible for their passengers once they finally quitted defendants’ premises, as McElroy had done when he was struck and injured.
Plaintiff argues, however, that because of McElroy’s “incapacitation” by intoxication the defendants owed a higher duty to him than to their other passengers. It is true that, “[w]hile a carrier is under no duty to accept as a passenger a person who is physically unable to take care of [himself] unattended by a caretaker, yet if such a person, without an attendant, is accepted by the carrier as a passenger, and his disability is apparent or made known at the time of his application for carriage to the servants of the carrier, it becomes the duty of the carrier to render to such person such special *957 care and assistance as his condition may require in order that he may be safely transported.” Williams v. Louisville & N. R.R., 150 Ala. 324, 43 So. 576 (1907). The incapacitation may result from intoxication. Central of Ga. Ry. v. Carleton, 163 Ala. 62, 51 So. 27 (1909). The key, however, is some degree of incapacitation, which plaintiff has produced no evidence of. .A person may have a smell of alcohol about him without being intoxicated or incapacitated in any way. According to the depositions considered on summary judgment McElroy did not appear drunk. He deboarded successfully without assistance, although it appears he staggered slightly, and crossed the highway without mishap. McElroy then recrossed the highway and again boarded and deboarded the bus, all without revealing any sign of “incapacitation.” To hold defendants responsible for this man as an “incapacitated” passenger would be to make common carriers the insurers of the safety of passengers who had had no more than a swig of alcohol. We decline to so extend the duty of a common carrier in this state. While McElroy’s accident and injuries were tragic, the defendants were in no way responsible, consequently, the summary judgment was properly granted.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.