## MORRISON v. COOMBS.

District Court, D. Maine.

June 29, 1938.

Nathan W. Thompson, of Portland, Me., for libelant.

Job H. Montgomery, of Camden, Me., for libelee.

PETERS, District Judge.

Upon hearing this libel, which is in personam, I find the following facts: The libelant's intestate, Rebecca E. Alley, died after sustaining certain bodily injuries while a passenger on the steamer Castine, on June 8, 1935, when that vessel was wrecked in Penobscot Bay. The Castine ran up on a ledge, tipped over on her side and threw passengers, including Mrs. Alley, on to the rail and into the water. This action is brought to recover damages for injuries thus received.

The libelee and his brother, Leighton W. Coombs, were the sole owners of the Castine and operated her together, the former acting as engineer and the latter as captain on the trip in question. She was a small steam vessel for many years carrying passengers and freight for hire in the Bay. The two owners paid the expenses of running the boat and divided the profits or the losses on each trip. They were in the habit of taking parties on excursions and on this last occasion had contracted with the Grange at Camden to take, its members from Camden to Vinalhaven by way of Rockland for the lump sum of sixty dollars. Some of the party were taken on at Camden, the rest at Rockland. The vessel was manned and equipped as the law requires. They left Rockland for Vinalhaven about 9:20 A.M. in a thick fog. Otherwise the weather was good and the sea smooth. Departure was taken from Shag Rocks, from which point to the bell buoy where the course is first changed for Vinalhaven, the distance is about eight miles and the regular time of the "Castine" forty minutes. The usual speed was maintained on what the captain, who was at the wheel all the time, supposed was the regular course; but the bell buoy was not picked up when it should have been. The captain slowed and then stopped the engine but in a few minutes the vessel piled up on Seal Ledge, the momentum being sufficient to run the boat up on her keel and shortly afterward tip at an angle of fifty-five degrees, or more, throwing people into the scuppers and into the water. Seal Ledge is one of several dangerous shoals in the immediate vicinity, marked by buoys. It is more than half a mile from the bell buoy the captain was running for and considerably off the course he should have steered. The fog was dense all the way.

Buoys of lobster traps had been seen by the side of the vessel before she struck. The captain knew some time before the disaster that he had missed the bell buoy and might be very near bad rocks and shoals, but he did not stop the vessel,— though he stopped the engine,—nor did he take soundings or other means of ascertaining his position. He either changed his course without knowing his position,— not having located the bell buoy,—or he was on the wrong course all the way. During the whole trip the captain was in charge of the navigation. His brother, the libelee, was all the time below in charge of the engine, taking his orders from the captain, and was not personally guilty of any failure of duty. Both of the brothers acted with great coolness and discretion after the accident occurred.

Upon the above I base the following conclusions of law:

█ 1. The relationship between the two brothers was a partnership. This is an obvious and necessary conclusion from the fact that they operated the steamboat together, shared the expenses and divided the profits. No citations are necessary.

█ 2. Each one of the partners is liable for any negligence of the other while carrying on the partnership business. This rests, of course, on the theory of agency, the rule being thus stated in Stockwell v. United States, 13 Wall. 531, 548, 20 L.Ed. 491:

"It rests upon the theory that the contract of partnership constitutes all its members agents for each other, and that when a loss must fall upon one of two innocent persons he must bear it who has been the occasion of the loss or has enabled a third person to cause it."

The rule that members of a partnership are liable for injuries resulting from negligence of one partner acting within the scope of the firm's business is stated in Corpus Juris, Vol. 47, Sec. 364, as follows:

"Although the fact of partnership does not, alone, render one member liable for torts of another, partners, and the firm, where it is considered as an entity, are, in the absence of statutory provision otherwise, liable to third persons for injuries resulting from wrongful omissions or acts of a copartner while acting within the general scope of the firm's business, or with the copartner's authority, without regard to personal knowledge of, or participation in, the wrong by such other members."

854

Also:

"Whenever a firm is answerable for the tort of any member, the liability of the partners is joint and several, and, as sometimes stated, in solido. It has, however, been held that individual liability for the firm's torts does not attach to one who became a member of the partnership after the tort was committed." Id. Sec. 392.

██ 3. I am compelled to the conclusion that the partner who was acting as captain was guilty of negligence in his navigation, which was the cause of the accident. In fact, there is no contention otherwise, and he has himself admitted that he was at fault; but, without regard to that, there is ample evidence of his negligence in the facts stated, without reference to other facts which have been called attention to and which are not mentioned above. The captain ran his full, regular speed in a dense fog. When he failed to pick up the bell buoy, or to hear it, at the end of forty minutes, he knew that he was lost in the fog and, in that particular locality, should not have allowed the boat to proceed any farther without making efforts to ascertain his position. He either changed the course of the vessel without locating the bell buoy and allowed her to run onto the rocks which he knew were in the vicinity, or, if he did not change the course, he must have been in the wrong course all the way. In either case he was negligent. This steamboat was used as a common carrier and the liability of the owners is that of common carriers and they are held for a much higher degree of care than a private carrier,—in fact, the highest degree of care for his passengers,—and on a showing of facts such as above the burden would be upon the defendant to show that the accident occurred without his negligence. McBride v. McNally, 243 Pa. 206, 89 A. 1131, 52 L. R.A.,N.S., 259, is in point and the headnote as follows:

"The owner of an excursion boat who contracts to carry a society on an excursion for a lump sum, taking only those who had tickets purchased from the society, owes a ticket holder the duty of a common carrier, and his liability is not limited to that of a mere bailee."

██ 4. The fact that the vessel was under contract to take passengers for a lump sum does not alter the responsibility of the owners. The captain was responsible for the navigation. It certainly would have been negligence on his part to have turned the navigation over to the Grange. See McBride v. McNally, supra.

██ 5. It follows that the libelee, Augustus Perry Coombs, one of the partners owning and operating the vessel, is liable for the negligence of his co-owner, the captain, which resulted in the loss of the vessel and injuries to the libelant.

The case was heard on the question of liability only and it will be referred to an assessor to determine the amount of damages.