## McBride *v.* McNally, Appellant.

*Negligence—Steamboats—Passengers—Degree of care—Charge to jury.*

1. A common carrier of passengers is charged with the highest degree of care in caring for passengers when they are in the act of boarding his means of conveyance and while they are on the means of conveyance which he provides, and where a passenger

sustains personal injuries in an accident caused by a disarrangement of any of the means of transportation, the burden is cast upon the carrier to show that he was without fault.

2. The rule with respect to the liability of common carriers has been extended to include all engaged in the transportation of passengers when such transportation is attended with danger to life and limb and the care and diligence is proportionate to the danger to the person carried.

3. One engaged in the operation of an excursion boat which he hires to societies for the transportation of members who purchase tickets from the societies, will be subject to the measure of liability for acts of negligence which the law imposes upon common carriers.

4. In an action of trespass to recover damages for personal injuries sustained by a woman in consequence of a fall from the gangplank of defendant's excursion steamer which had been hired by a society to carry members who should purchase tickets, it appeared that the gangplank had not been properly fastened; that an effort was made to take on passengers when the boat was improperly secured; that in consequence the gangplank tilted and the woman was thrown into the stream and injured; the trial judge charged the jury that the fact that the accident happened upon some of the means of transportation, defendant being a common carrier, threw the burden on the defendant to satisfy the jury by the weight of the evidence, as to how it occurred, and that it occurred without negligence on his part, and that the defendant was held to the highest degree of care in caring for passengers when they were in the act of boarding his means of conveyance, and while they were on the means of conveyance, which he had provided. *Held,* no error.

Argued Oct. 21, 1913. Appeals, Nos. 41 and 42, Oct. T., 1913, by defendant, from judgment of C. P. Allegheny Co., Aug. T., 1910, No. 393, on verdict for plaintiffs in case of W. D. McBride and Margaret E. McBride, his wife, v. William McNally. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before EVANS, J.

The opinion of the Supreme Court states the facts.

Verdict for W. D. McBride for $1,500 and for Margaret E. McBride for $2,500 and judgment thereon. Defendant appealed.

*Errors assigned* were various instructions to the jury, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant, n. o. v.

*L. C. Barton,* with him *Wm. J. Brennen,* for appellant.

*Rody P. Marshall,* with him *Meredith R. Marshall,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 5, 1914:

The appellant, operating on the Ohio river an excursion steamboat of which he was owner, had engaged to carry the members of a certain church society on an excursion up and down the river, for a lump sum. At the appointed time he conducted his boat to the appointed landing where the passengers were to embark, and having landed, with the bow of his boat up the stream, extended the gangplank to admit the passengers. The appellee, Mrs. McBride, who had purchased a ticket for the excursion from the society started to board the steamboat by way of this gangplank, when, in consequence of the gangplank turning or tilting, she was thrown into the river and injured. The action was brought to recover damages for the injuries she sustained. The negligence complained of was, first, failure to properly and securely fasten the gangplank at both ends, and, second, failure to properly fasten the boat, and, third, the making an improper landing for the purpose of taking on passengers. The issues of fact were determined by the jury adversely to the defendant. The assignments of error relate to the instructions of the court with respect to the law of the case. In his charge the learned trial judge gave the following instructions:

"The simple fact that the accident happened, if it

happened upon some means of transportation, this being a common carrier, threw the burden on the defendant to satisfy you by the weight of the evidence as to how it occurred, and that it occurred without negligence on his part."

"But if you find that she (the plaintiff) had bought a ticket in the regular way and was a prospective passenger, then the defendant owed to her the duties of a passenger, and he owed her,—not insurance—the common carrier does not insure the safety and lives of his passengers; but he is held to the highest degree of care in caring for them when they are in the act of boarding his means of conveyance, and while they are on the means of conveyance which he provides, which in this case was the steamer."

The ground of complaint is that the instructions charged appellant with a higher degree of care with respect to passengers and intending passengers than the law exacts under conditions here; that the appellant was not, at least pro hac vice, a common carrier of passengers, and therefore not bound to the highest degree of care, but was simply a bailee bound to the exercise of ordinary care, and liable only for ordinary negligence. It is too clear for discussion that the appellant with respect to his engagement to carry this body of excursionists did not stand in the relation of either bailor or bailee. Bailment ordinarily implies the delivery of some article of personal nature for some purpose, on contract that after the purpose has been fulfilled it shall be returned to the bailor. Without delivery over there can be no bailment; the contract is to return the thing delivered when the purpose has been served. The boat in this case was never for a moment out of the possession of the appellant; his was the boat, his was the crew, his was the exclusive management and direction from beginning to end; his contract being simply to employ the boat within certain hours of a particular day in transporting persons to be indicated by the society with which

he was contracting, between certain indicated points, for a lump sum, with an implied if not expressed understanding that only those having tickets obtained through the society were to be admitted on board. It is impossible to see anything in this last stipulation that would relieve the appellant from his common law liability as a carrier of passengers. The contractual relation existed between him and each party holding a ticket, since the society could only issue a ticket entitling the holder to transportation as it had been authorized by the appellant, and having been so authorized by him the society was but the appellant's agent; or it may be put in the other way with equal propriety, that the society in making the contract became the agent of the passenger in the negotiation with the appellant.

No more can it be contended that the appellant was a private carrier. His was an excursion boat, so referred to throughout the case, and so admitted to be in the history of the case accompanying the argument. Whether the duty which ordinarily distinguishes common from private carriers—that of serving all without discrimination—attached to him is immaterial. The one business he was engaged in was the operation of his boat in the carrying of passengers for hire, and the fact that he was so employed is sufficient to constitute him a common carrier. If, for technical reasons, he is to be excluded from the class of common carriers, such fact will not exempt him from the measure of liability which the law imposes on these. The rule with respect to the liability of common carriers has very wisely been extended so as to include all engaged in the transportation of passengers when such transportation is attended with danger to life or limb, and the care and diligence is proportionate to the danger to the person carried. Technically one running and controlling an elevator is not a common carrier in the sense that he is obliged to serve indiscriminately, and yet it has been held that because persons who are lifted by elevators are subjected to great risks

to life and limb, the person running such elevator must be held to undertake to raise such persons safely as far as human care and foresight will go. This is applying the same rule that governs in case of public carriers of passengers, and it is approved by this court in Fox v. Philadelphia, 208 Pa. 127. It was this rule that the learned trial judge applied in this case. That his instructions with regard to burden of proof and degree of care required in case of common carrier of passengers were correct, is not questioned. The appellant by reason of his employment must be subjected to the same rule. Considerations affecting the safety of the public require it. We see no error in the record and the judgment is accordingly affirmed.