· (104 So. 21)

NORTH AMERICAN ACC. INS. CO. v. PITTS. (7 Div. 549.)

(Supreme Court of Alabama. March 26, 1925. Rehearing Denied April 30, 1925.)

1. Carriers ⬤⇒4—Test whether one is "common carrier," stated.

Test of whether one is "common carrier" by land, water, or air, is whether he held out that he would carry for hire, so long as he has room, all persons applying, or goods of every one bringing goods to him, for carriage.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common Carrier.]

2. Carriers ⬤⇒4—Distinction between "public or common carrier of passengers" and "special or private carrier," stated.

It is duty of "public or common carrier of passengers," as distinguished from "special or private carrier," to receive all who apply for passage as long as there is room and no legal excuse for refusing.

3. Insurance ⬤⇒452—Aeroplane held not "public conveyance provided by a common carrier for passenger service only," within accidental death policy.

Aeroplane operating on no schedule, carrying no baggage, and making no stops in flight, but making trips by special arrangement with prospective passengers, whom owner operating it was under no duty to receive without race or other discrimination, so long as there was room and no legal excuse, held not "public conveyance provided by a common carrier for passenger service only," within policy insuring against accidental death from injuries received while riding as passenger in· "railroad car, steamboat, automobile, omnibus, cab or other public conveyance," etc., not being conveyance of same kind or species as those enumerated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Conveyance.]

4. Contracts ⬤⇒156—General word or phrase following enumeration of specific things refers to things of same kind.

General word or phrase, following enumeration of specific things in statute or contract, is held to refer to things of same kind.

<hr>

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Insurance** ⬥⟿452—Aeroplane operator's duty toward passengers held not to render aeroplane "common carrier" within accidental death policy.

That it was duty of aeroplane owner and operator, contracting with persons to make flights, to exercise highest degree of care and caution for their safety, did not render aeroplane a common carrier of passengers within accidental death policy.

Appeal from Circuit Court, Talladega County; S. W. Tate, Judge.

Action on policy of insurance by Mary Lee Pitts against the North American Accident Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

The aeroplane was not a common carrier, within the provisions of the insurance policy sued on. 2 C. J. 305; Thompson Houston Co. v. Simon, 20 Or. 60, 25 P. 147, 10 L. R. A. 251, 23 Am. St. Rep. 86; Best Park v. Rollins, 192 Ala. 534, 68 So. 417, Ann. Cas. 1917D, 929; O'Callaghan v. Dellwood Park, 242 Ill. 336, 89 N. E. 1005, 26 L. R. A. (N. S.) 1054, 134 Am. St. Rep. 331, 17 Ann. Cas. 407; Ga. L. I. Co. v. Easter, 189 Ala. 472, 66 So. 514, L. R. A. 1915C, 456; Orr & Lanning v. Boockholdt, 10 Ala. App. 331, 65 So. 431; 4 Elliott on R. R. (2d Ed.) § 1577a; Rathbun v. Ocean A. & G. Corp., 299 Ill. 562, 132 N. E. 754, 19 A. L. R. 140; Ind. T. & T. Co. v. Lawson, 143 F. 834, 74 C. C. A. 630, 5 L. R. A. (N. S.) 721, 6 Ann. Cas. 666; Meisner v. Detroit Co., 154 Mich. 545, 118 N. W. 14, 19 L. R. A. (N. S.) 872, 129 Am. St. Rep. 493; Oppenheimer v. Maryland Cas. Co., 70 Pa. Super. Ct. 382; Terminal Taxi Co. v. Kutz, 241 U. S. 252, 36 S. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765.

Knox, Dixon, Sims & Bingham, of Talladega, for appellee.

One who undertakes, for a reward, to carry all persons indiscriminately, so long as there is room and no legal excuse for refusing, is a common carrier of passengers. Ga. L. I. Co. v. Easter, 189 Ala. 472, 66 So. 514, L. R. A. 1915C, 456; 10 C. J. 606; 4 R. C. L. 1000; 2 Words and Phrases, 1319; Anderson v. Fidelity Co., 228 N. Y. 475, 127 N. E. 584, 9 A. L. R. 1544. The business may be that of a common carrier, though no stops are made, and the conveyance does not move between fixed termini, and though the carrier may refuse an applicant at his pleasure, or though the business be for pleasure or recreation only. 10 C. J. 607; 14 R. C. L. 1241; Hinds v. Steere, 209 Mass. 442, 95 N. E. 844, 35 L. R. A. (N. S.) 658; O'Callaghan v. Dellwood Park, 242 Ill. 336, 89 N. E. 1005, 26 L. R. A. (N. S.) 1054, 134 Am. St. Rep. 331, 17 Ann. Cas. 407; Best Park v. Rollins, 192 Ala. 534, 68 So. 417, Ann. Cas. 1917D, 929; Cushing v. White, 101 Wash. 172, 172 P. 229, L. R. A. 1918F, 463; Lloyd v. Haugh & K. Co. 223 Pa. 148, 72 A. 516, 21 L. R. A. (N. S.) 188; Bank v. Adams Exp. Co., 95 U. S. 174, 23 L. Ed. 872.

MILLER, J. This is a suit on an insurance policy by Mary Lee Pitts, the beneficiary, against the North American Accident Insurance Company, a body corporate, that issued the policy against the accidental death of Hugh D. Brown. The deceased met his death on August 19, 1923, through external, violent, and accidental means, solely and independently of all other causes, by the fall of an aeroplane from the air in which he was riding. The defendant pleaded general issue, in short by consent, with leave to give in evidence any matter that might be specially pleaded, with like leave to plaintiff to give in evidence any matter admissible in reply thereto. The jury returned a verdict in favor of the plaintiff, and from a judgment thereon by the court this appeal is prosecuted by the defendant.

The policy was originally for $2,000, but it provided an increase of 10 per cent. per annum on each annual renewal until a total increase of 50 per centum of the original amount had been reached on benefits for death under circumstances mentioned therein. This policy had been annually renewed for more than five years before the death of the insured, and this increased the original amount from $2,000 to $3,000 for benefits for death under certain circumstances provided in the policy. So the defendant under the terms of the policy was liable to the beneficiary for $3,000, with interest, if death of insured (Hugh D. Brown) resulted "within thirty days from the date of accident from bodily injuries inflicted through external, violent and accidental means and solely and independently of all other causes, and only if such injuries are received as follows: (1) While actually riding as a passenger in a place regularly provided for the transportation of passengers within a surface, underground or elevated railroad car, steamboat, automobile, omnibus, cab or other public conveyance provided by a common carrier, for passenger service only."

The policy provided if the death resulted within the 30 days from an accident otherwise than as above specified, the beneficiary would be entitled to only one-twentieth of said amount, which would be one hundred and fifty dollars.

The plaintiff requested the court in writing to charge the jury as follows:

"The court charges the jury that, if they believe the evidence in this case, they must find

for the plaintiff for the sum of $3,000 with interest from August 19, 1923."

The court gave the foregoing charge, and it is assigned as error by the defendant.

The defendant asked the court to give the following written charge to the jury:

"I charge you, gentlemen of the jury, that if you believe the evidence in this case, your verdict must not be for more than $150, with interest from August 19, 1923."

This charge was refused by the court, and it is assigned as error by the defendant.

It is admitted the policy was in force, that notice of death thereunder was properly given, that the principal amount of the policy for loss of life was $3,000, and that the policy had been in force by renewals for more than five years when the insured was killed.

Hugh D. Brown and others were at Camp Walton, in the state of Florida, on August 19, 1923. He and four others on that day entered an airship or aeroplane with the pilot and owner, Albert Whitted, for a trip or fly in the air, and they paid or agreed to pay $25 for the flight. The aeroplane fell while in the air, and Hugh D. Brown and the five others therein were killed.

The appellee contends the aeroplane at the time of the accident was "a public conveyance provided by a common carrier for passenger service only" within the meaning of the policy; the trial court so held, and appellee claims the court properly gave the written charge, with hypothesis, requested by plaintiff for the sum of $3,000, with interest.

The appellant contends the aeroplane was not used by Whitted as a common carrier of passengers under the meaning of the policy at the time of the death of Hugh D. Brown, but was merely an amusement enterprise operated by him for hire, for the purpose of giving a thrill to those who cared to patronize it.

We are cited to no authority, holding an aeroplane used under the circumstances as shown by this record, or under any other circumstances, has become so invested with public interest as to become a common carrier for passengers only, and to have received an adjudication thereon by the courts of last resort in the United States. However, we find the following general text in 2 Corpus Juris, 305:

"The rules governing the business of a common carrier by airship or flying machine may be readily assimilated to those applied to other common carriers."

So we must look to the evidence to see if this aeroplane when it fell, causing the death of the deceased, was such a public conveyance as then operated by its owner, Whitted, as to bring it within the term "common carrier for passenger service only," as defined by our courts, and as contemplated by the parties in the policy contract. This is the real question presented under the policy contract. Was the aeroplane "a public conveyance provided by a common carrier for passenger service only" when the deceased was killed? What is the substance of the evidence on this subject? The parties agree it is not in conflict in its material parts, and one or the other of the foregoing written charges should have been given by the court.

One Albert Whitted, an experienced aviator, was engaged in the business of visiting resorts along the Florida coast and towns in Mississippi and Tennessee during the last three years of his life with an aeroplane owned and controlled by him, and while at these places he would take persons up for flights in his plane for hire. During the summer of 1923, at the week-ends he visited Camp Walton, a summer resort in Florida, and while there his business would be to take passengers up for short flights around the bay for hire, and while there persons could, and did, make contracts with him to carry them from there to Pensacola, and other points. He would be at this resort during the week-ends, from two to three and four days; then he would return to Pensacola with his aeroplane, where he was engaged in constructing another airship for a person in Natchez, Miss. Its construction was carried on through the week when he was not at Camp Walton.

During these week-end stays at Camp Walton, the number of his flights in the air varied with the weather, the number of people desiring to take the trip, and his physical condition. He was under no general contract with any one to come to Camp Walton; he made no given number of flights per day or week; he did not operate his machine on any schedule; sold no tickets; would not take less than three nor more than five persons at a time; and the charge was $5 each. The flight usually began and ended in front of the hotel. The aeroplane would rise from the water, and would not stop in its flight until it circled the bay and returned to the usual starting point. The height, direction, and time (from 10 to 15 minutes) of each trip was substantially the same. If occupants requested certain heights to fly, and it was reasonable, he would comply with it; otherwise he would not. He owned, operated, and controlled the machine. He had the right to take only such persons as he saw fit; he took only white people, would not take negroes, or intoxicated persons; and it was generally understood that he was under no duty to take up passengers or make any trips unless it pleased him, or he saw fit to do so. There was no evidence that he ever refused to take passengers, provided weather conditions permitted flying, and a sufficient number of passengers applied for a

trip to justify going up. The flight in the air on which the decedent was killed was similar to the ones described, except for the fatal ending. The aeroplane on these flights never carried any baggage. "He charged a fixed rate for the usual trip, but if the passenger wanted to ride longer or further, it was just like a taxi, he would for the money extra carry them further or stay in the air longer, if he had the gasoline."

[1] What is a common carrier?. In Babcock v. Herbert, 3 Ala. 396, 37 Am. Dec. 695, this court wrote:

"A common carrier is one who undertakes for hire or reward, to transport the goods of such as choose to employ him from place to place."

In Central R. & B. Co. v. Lampley, 76 Ala. 364, 52 Am. Rep. 334, we find this definition:

"A common carrier, as generally defined, is one whose usual or regular business is the transportation, for reward, of goods from one place to another, for such persons as choose to employ him."

This court, in Georgia Life Ins. Co. v. Easter, 189 Ala. 478, 66 So. 514, L. R. A. 1915C, 456, quoted with approval this definition of a common carrier "by land or water," and the words "or air" might be added after the word water with propriety, since we now have the aeroplane:

"The real test whether a man is a common carrier, whether by land or water, therefore, really is whether he has held out that he will, so long as he has room, carry for hire the goods of every person who will bring goods to him to be carried. The test is not whether he is carrying as a public employment or whether he carries to a fixed place, but whether he holds out, either expressly or by a course of conduct, that he will carry for hire, so long as he had room, the goods of all persons indifferently who send him goods to be carried."

This court in that case then stated:

"Under this rule a stagecoach, a bus, an automobile, or a hackney coach, a cab, dray, cart, wagon, or sled, which undertakes for a reward to carry, indiscriminately, passengers or baggage for the public 'so long as there is room,' is a common carrier."

The court in that case also stated, if it was a common carrier for passengers, then "any decent member of the public has a right, so long as there is room for him * * * to demand that he be permitted to ride"; but the court very properly in the same opinion observed this clear and correct rule:

"The members of each race—white and black —have a claim upon a common carrier for equal accommodations while they travel. The members of neither race have, in this state, the right to demand that they be permitted to travel in a conveyance kept exclusively for the other race, but they have a right to demand that the conveyance which is kept for them shall be equal, in point of accommodation, to that kept for the members of the other race. The laws of hygiene, common sense, and necessity dictate this rule of the law. Necessity frequently fixes a rule of law where, in the absence of necessity, no such rule would exist. Waldrop v. N. C. & St. L. Ry., 183 Ala. 226, 62 So. 769."

This court, in B'ham. R. L. & P. Co. v. Adams, 146 Ala. 271, 40 So. 386, 119 Am. St. Rep. 27, also defined a common carrier of passengers as follows:

"A common carrier of passengers is one who is engaged in a public calling, which imposes upon him the duty to serve all without discrimination."

Section 1033, 10 Corpus Juris, 606, gives this general text:

"Public carriers of passengers, like common carriers of goods, are engaged in a public calling which imposes on them a duty to serve all without discrimination."

And this section also defines public carriers of passengers as follows:

"One who undertakes for hire to carry all persons, indifferently, who may apply for passage, as long as there is room and there is no legal excuse for refusing."

[2] The distinguishing difference between a common carrier of passengers and a special or private carrier of same is stated in this section (1033) of 10 Corpus Juris, p. 607, as follows:

"The distinction between a public or common carrier of passengers and a special or private carrier of the same is that it is the duty of the former to receive all who apply for passage, so long as there is room and no legal excuse for refusing, while such duty does not rest upon the latter."

The foregoing is in the very language of Orr v. Boockholdt, 10 Ala. App. 334, 65 So. 430.

[3] This aeroplane as operated by Whitted cannot be called a common carrier of passengers. It cannot be designated "a public conveyance, provided by a common carrier for passenger service only," as the policy contract contemplated. The connection in which these general words are used with the other conveyances mentioned in the policy contract strengthens this conclusion. The conveyances mentioned in the policy are "railroad car, steamboat, automobile, omnibus, or cab"; and then follows the more general words or phrase, "or other public conveyance provided by a common carrier for passenger service only." This aeroplane is not a conveyance of the same kind or species as the others enumerated in the policy contract. It was used to fly in the air; and the other conveyances enumerated are used on land or water.

[4] In this connection, we find this general text applicable to the construction of the policy here in question in 19 Corpus Juris, 1255:

"A well-known maxim of construction, to aid in ascertaining the meaning of a statute or other written instrument, the doctrine being that, where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind."

This aeroplane was strikingly different in its appearance and use for passenger service from the conveyances particularly mentioned in the policy, and it was not in the contemplation of the contracting parties when the policy was issued. No one could demand a ride in·this aeroplane. It had no schedule, and it carried no baggage. It made no stops in its flight, ended usually where it commenced. The trips in the air were each made by special arrangement with the owner by the prospective passengers. It could be hired at times to make special trips from one place to another. These flights in the air from the water in front of the hotel around the bay and return were made at no regular times, but by arrangement with the owner by the prospective passengers. He was under no duty to receive all who applied, without discrimination, so long as there was room, and no legal excuse. He would not take negroes. He was under no duty to return to Camp Walton when he left after the week-end. He was under no duty or obligation to fly his machine. He was under no duty or obligation to fly his machine on these trips, for any that applied. It was not operated by him as a public or common carrier of passengers, but as a private carrier of passengers under special contract made with the owner. It was owned and personally operated by him for hire, when it met with his pleasure or he saw fit to do so, and it was so generally understood in and around Camp Walton.

[5] It is true the trip through the air was dangerous, and it was the duty of Whitted, after he had contracted with persons to make the flight, to exercise the highest degree of care and caution for the safety of the passengers; but this did not render the aeroplane as operated by him a common carrier of passengers. Authorities supra. See, also, Best Park Amusement Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann. Cas. 1917D, 929; 10 Corpus Juris, 608, headnotes 79 and 80; 19 Corpus Juris, 1255.

So, we hold the trial court erred in giving the written affirmative charge, with hypothesis, requested by the plaintiff for $3,000, with interest; and it erred in refusing to give the written charge requested by the defendant. The trial court should have refused the former and given the latter written charge.

For the errors mentioned, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.