## MARY CUMMINGS v. GREAT AMERICAN CASUALTY COMPANY.[1]

March 20, 1931.

No. 28,360.

*N. R. Ryerson* and *George A. Barnes*, for appellant.
*Julian E. Morten* and *Einar Hoidale*, for respondent.

STONE, J.

Action to recover a death indemnity under a policy of accident insurance. The trial without a jury resulted in a decision for plaintiff. Defendant appeals from the order denying its motion for amended findings or a new trial.

Plaintiff is the beneficiary of the policy, which was issued November 23, 1928. Her husband, Lloyd Cummings, was the insured. July 28, 1929, while the policy was in force, he lost his life while a passenger on a motorboat destroyed in a collision on Lake Okoboji in Iowa. The policy covered the insured "while actually riding as a passenger * * * in a place regularly provided for the transportation of passengers within a surface or elevated railroad or subway car, steamboat or other public conveyance provided by

[1]Reported in 235 N. W. 617.

a common carrier, for passenger service only." The one question litigated below and presented here is whether the boat was a "public conveyance provided by a common carrier, for passenger service only," within the policy provision above quoted.

The craft was so designed and motored as to be in the speed class and aptly named "Miss Thriller." It was capable of carrying 20 passengers. The owners were operating it solely for excursion purposes, taking passengers on a rapid tour of the lake, starting from and returning to their own dock without other stops. Each trip required about 15 minutes. Two smaller boats were operated in the same manner by the same owners, who were licensed by state authority "to carry passengers." By appropriate advertising they held themselves out as ready to receive passengers at 50 cents each for the round trip of the lake. There was nothing in their advertising or conduct otherwise indicating that they reserved the right or proposed to refuse any person or class of persons as passengers. They did decline to go out with the "big boat" unless they had a minimum load of six. If there were fewer passengers than that for a given trip, a smaller boat was used. "These boats were open to the public," and the owners "invited the public to ride." The wharf from which the boat was operated was a public landing. The testimony of one of the owners is that not only were the public generally invited to ride, but also that "we never refused anybody." "We would haul them; we had to because we were operating for the public. If you bought a ticket and was going out, we had to take you * * * it was just the same as the public going to a picture show * * * we was operating the boat for the public."

For defendant there is urged, in all its strictness, the common law concept of a common carrier and his duties. See 1 Hutchinson, Carriers (3 ed.) §§ 47 and 48. "A common carrier is one who undertakes, for hire, to transport from place to place the goods or persons of such as choose to employ him." 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1204. See also 2 Wd. & Phr. (3 ser.) 192, et seq. It is urged that one cannot be a common carrier unless his transportation of goods or persons is carried on "generally as a business,

and not as a casual occupation." That requirement is met by the facts. Their owners were operating the boats in question regularly. It was their established business. They do not appear to have had any other. The launches were not operated as mere adjuncts to a summer resort or incidents of any other business or occupation.

The next proposition for defendant, and it is the important one, is that a common carrier must serve all who "choose to employ him," and that the owners and the speed boat here in question were not so employed. There again the record has been construed against defendant by the decision below and, we think, reasonably so. One who is actually holding himself out as ready and willing to serve the public generally, without express reservation of the right, arbitrarily or otherwise, to refuse given individuals or classes, and who otherwise fills the requirements, is not prevented from being a common carrier by reason of any unexpressed supposition or mere mental reservation. Cushing v. White, 101 Wash. 172, 172 P. 229, L. R. A. 1918F, 463; Lloyd v. Haugh & Keenan S. & T. Co. 223 Pa. 148, 72 A. 516, 21 L.R.A.(N.S.) 188. But nothing even of that kind appears now. The boat owners, so far as we can see, intended to serve all comers. They neither refused nor intended to refuse anyone so long as they had the room necessary for his carriage.

There is no occasion for a discussion or even much citation of cases. They are found in great number under the head of *Common Carriers* in Words & Phrases, first, second, and third series. Excursion boats serving the public are held to be conveyances provided by common carriers. Dunn v. New Amsterdam Cas. Co. 141 App. Div. 478, 126 N. Y. S. 229; McBride v. McNally, 243 Pa. 206, 89 A. 1131, 52 L.R.A.(N.S.) 259.

In North American Acc. Ins. Co. v. Pitts, 213 Ala. 102, 104 So. 21, 40 A. L. R. 1171, an aeroplane was held not to be a vehicle provided by a common carrier of passengers upon the ground that the owner carried only such persons as he saw fit. Among others he refused to carry negroes. The same accident was involved in Brown v. Pacific M. L. Ins. Co. (C. C. A.) 8 F. (2d) 996. The same result was reached and for the same reason.

Order affirmed.