## Wood v. Kugler's Restaurant

*John E. Dickerson*, for plaintiff.

*Raymond A. White, Jr.*, for defendant.

MILLAR, J., March 24, 1939.—We are considering defendant's motions for judgment non obstante veredicto

and for a new trial. The action is in trespass and the facts, briefly, are these:

On April 24, 1937, in the early evening, plaintiff, a lady approaching 70 years of age, went to the restaurant operated by defendant, for the purpose of attending a social function which was being held on the second floor of defendant's establishment. She first approached defendant's cashier and inquired where the elevator was located. Upon being advised that there was no elevator to take her to the second floor but that access to the banquet room could be had by means of a staircase or an escalator, she replied that she supposed it would be impossible for her to attend the function since her physician advised her not to climb so many steps and she was afraid to use the escalator and then began to leave the establishment, whereupon she was approached by a girl who worked in defendant's cloakroom and was informed that it was foolish to leave and that it was perfectly safe to go up to the second floor by means of the stairway or the escalator, and the cloakroom attendant offered to assist her. Plaintiff declined to go by means of the stairway because there were two flights of steps from the first to the second floor, broken by a landing in the centre. She repeated that she was fearful of going up by way of the escalator, but upon being assured that it was perfectly safe and that the cloakroom attendant would assist her she assented and the attendant preceded her on the escalator for the purpose of assisting her off at the top.

Plaintiff had suffered from "arthritis deformans" and a "Dercum" right leg for a number of years prior to this occurrence. Her physical condition, due to these ailments, was not good. Her left hand, according to her testimony, was almost normal, but her right hand was somewhat deformed due to the arthritis and, as explained, she had a "Dercum" right leg. She however, testified that she took hold of the "left hand rail, a very firm hold of the left hand rail, and also a hold on the right hand rail,

and I put my left foot on the step and before I could do anything I was thrown backwards". As a result of being thrown backwards her left leg was injured and for these injuries this suit was brought.

The case was tried February 20, and 21, 1939, and resulted in a verdict for plaintiff in the sum of $2,000.

Defendant had offered a point for binding instructions, which was refused, whereupon motions were filed by defendant for a new trial and for judgment non obstante veredicto.

The reasons assigned in defendant's motion for a new trial are: That the verdict was against the evidence, the weight of the evidence, and was excessive; and the reason assigned for defendant's motion for judgment non obstante veredicto was the court's declination of defendant's point for binding instructions.

It is plaintiff's contention that an escalator is a common carrier and that, although defendant is not an insurer of the safety of its patrons, it is bound to exercise the highest practical degree of care for their safety, and where a passenger is injured through some defect in the means of transportation, or the manner of operation of that means of transportation, the burden is upon defendant to show that it could not have been prevented by human foresight; that defendant is bound to exercise the utmost degree of diligence and care, and the slightest neglect against which human prudence and foresight might guard, and by which hurt or loss is occasioned, will render defendant liable to answer in damages; furthermore, that the mere happening of an injurious accident raises, prima facie, a presumption of neglect and throws upon defendant the onus of showing that it did not exist.

That is, of course, the law and it is supported by a number of cases, one of which is Petrie v. Kaufman & Baer Co., 291 Pa. 211.

That case arose out of plaintiff's fall on an escalator while in defendant's store, and in the course of being conveyed from one floor to another. But the instant case is

distinguishable from that case, where it was shown that plaintiff while a customer in the store operated by defendant company stepped on an escalator and was carried about one third the distance between floors when the escalator momentarily stopped and then started forward with such a violent and sudden jerk as to throw her down, causing the injuries.

In the present case, there is no testimony that there was anything wrong with the construction, maintenance, or operation of the escalator and there was no stop, start, or sudden jerk. The escalator, according to the testimony, was operating smoothly at the time the accident occurred.

In Petrie v. Kaufman & Baer Co., supra, the court said (pp. 213-214) :

"While a carrier is not an insurer of the safety of the passengers, he is bound to exercise the highest practical degree of care for their safety, and where a passenger is injured through some *defect* in the *means of transportation or the manner of operation*, the burden is upon the carrier to show it could not have been prevented by human foresight."

That is the law as to common carriers generally. No citation of authority is necessary as to what is required in the usual common carrier case. A defect in either the vehicle or manner of its operation must first be shown before the burden of proving it could not have been guarded against by the exercise of human foresight shifts to defendant.

Another case relied upon by plaintiff is McBride v. McNally, 243 Pa. 206, where plaintiff was about to board an excursion steamer by means of a gangplank supplied by defendant which had not been properly fastened and tilted, whereupon plaintiff was thrown into the stream, and it was there held that the rule applied, casting the burden upon the carrier to show that it was without fault.

In Bickley v. Philadelphia & Reading Ry. Co., 257 Pa. 369, as plaintiff was about to board a railroad car she

saw a man working at the ceiling of the car and when she had reached a step below the platform upon which he was standing she received a heavy blow on the right of her head, and it was there held that the rule applied.

Likewise, in McKnight v. S. S. Kresge Co., 285 Pa. 489, where plaintiff's decedent was unloading a safe from an elevator, it was shown that while that operation was being performed by decedent and when the safe was partially off the elevator, the elevator for some reason moved upward, tilting the safe forward and causing the death of plaintiff's husband.

In each of these cases it will be observed that there was some negligence shown, either in the construction, maintenance, or operation of the means of transportation provided by defendant, and because of that defect the court held the burden shifted.

In this case there is a total absence of any evidence of a defect in either the construction, maintenance, or operation of the escalator.

Plaintiff contends that the escalator was antiquated. It is true the testimony would indicate that it has been in use for a number of years and is still in use. The testimony indicated that it was in good condition, had been inspected that day by defendant, and was running smoothly when the accident occurred. We know of no rule of law that requires a restaurant owner to purchase a new escalator every time a new type or model is developed. That would be as unreasonable as to require a railroad company to provide new locomotives or coaches, or a transit company to purchase new trolley cars or buses every time a new type is developed.

In addition, plaintiff had the opportunity to either use the stairway or the escalator, or of not attending the social function. In spite of her timidity with reference to her use of the escalator she used it and, in view of her physical condition, although she knew that adjacent thereto defendant had provided a stairway, and if she chose to test what she regarded as a dangerous means of

transportation, she thereby elected to test what she might have regarded as a dangerous instrument and the consequences must be borne by her. To hold defendant liable would be to find that the mere happening of the accident placed a liability on defendant. This is not the law.

Plaintiff did not orally argue with respect to any rulings of the trial judge. However, we notice in her brief objection is raised to some of those rulings. So far as we know plaintiff has filed no motion and inasmuch as the rulings were not the subject of criticism from defendant, whose motions we are now considering, we have not referred to plaintiff's criticisms.

For these reasons defendant's motion for judgment non obstante veredicto is granted and the motion for a new trial is overruled.

March 24, 1939, judgment is now entered for defendant.