**Mary Hicks SEMON, Gloria Semon Sheerer, and the Minor, Carolyn Semon Jones, through her Tutor, The Commercial National Bank in Shreveport,**

v.

**ROYAL INDEMNITY COMPANY.**

Civ. A. No. 7395.

United States District Court
W. D. Louisiana,
Shreveport Division.

Dec. 23, 1959.

Harry V. Booth, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, La., for plaintiffs.

Richard H. Switzer, Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

This is a suit for certain benefits claimed to be due under a policy of accident insurance issued by defendant on August 9, 1939, to Lewin N. Semon, late of Shreveport, Louisiana.

The principal sum of the policy was in the amount of $20,000, payable upon the occurrence of the insured's death through accidental means. The policy further provided that "Any amount payable under * * * this Policy shall be doubled if such injuries are sustained by the Insured (1) while a passenger in or upon a public conveyance provided by a common carrier for passenger service * * *".

On May 30, 1958, Semon accidentally drowned when he fell from the motorboat Sportsman into the waters of Mississippi Sound at a point approximately 400 yards north-northeast of Beacon B, Pass Aux Heron, Alabama. His widow and children, as his heirs, plaintiffs here, made claim under the policy for the principal sum of $20,000, which defendant paid, and for an additional $20,000 under the "Double Indemnity" proviso above quoted, for which defendant declined liability on the ground that the Sportsman was not a "common carrier".

Thereafter, suit was filed by plaintiffs in the State Court, claiming twice the amount of the double indemnity sum, plus an attorney's fee of $7,500, or a total of $47,500, under the provisions of LSA–R.S. 22:657. Defendant timely removed the case here, on grounds of diverse citizenship, and then filed a motion for summary judgment, supported by the affidavit of Captain Earl Bryant, owner and master of the Sportsman. The facts related in the affidavit are not disputed by plaintiffs, and, coincidentally, were already well known to the Court, who for many years had fished from the vessel as a member of charter parties engaging it for that purpose.

The M/B Sportsman is a Class III passenger motorboat, approximately 60 feet in length, owned and operated by Captain Bryant out of Bayou La Battre, Alabama, near the coast of the Gulf of Mexico. It is used exclusively by charter parties, usually of eight to ten people, for fishing and pleasure trips, for which reservations are made months in advance. A flat daily rate is charged, regardless of the number of passengers aboard. The Captain had the right to, and does, refuse to charter for any reason. Only white people are carried; and the Captain often has refused to let persons other than members of his charter parties come aboard. He operates on no fixed schedules and is not regulated, except as to safety by the Coast Guard, by any governmental agency; neither does he have to report to any one the kind or number of passengers he takes on trips. In his own words, the situation is as follows:

"Q. For the most part yours is just a charter service that you provide for business and pleasure and you determine your activities by the weather? A. Yes.

"Q. And you charter to customers by their actions and color? A. Yes.

"Q. This is not a public conveyance? A. No. Sometimes people come down and ask if they can go out and I have to tell them this is a private party. People whom I take out together are friends; they have known each other.

"Q. They come as a group? A. Yes.

"Q.. If you were to have a group of, say, eight scheduled and somebody walked up over here and said, 'I want to go, too,' * * *. A. I would tell him it would be impossible for him to join the party. They come up every now and then. People call me from the Admiral Semmes and the Battle House downtown to join the fishing trip, and I have to tell them it would be impos-

sible for them to do so. One person will usually charter the boat. For instance, Judge Henry Turner from Shreveport chartered the boat. Of course, I didn't know who he was bringing along until the party arrived. He does the choosing of who comes with him. They bring their own party.

"Q. But just a stranger walking up, someone you didn't know or that the other people didn't know, he couldn't just insist on joining the party? A. Impossible.

"Q. You would just have to tell him it was a private party? A. Yes."

In the face of these facts, can it be said that Captain Bryant operated the Sportsman as a "common carrier", so as to afford plaintiffs the coverage under the policy they here claim? We think not.

█ 13 C.J.S. verbo Carriers §§ 530, 538, p. 1034 et seq., describes "common carriers" of passengers as follows:

"Public or common carriers of passengers, like common carriers of goods, *are engaged in a public calling which imposes on them a duty to serve all without discrimination*, as will be explained in § 538; * * *. (Emphasis supplied.)

" * * * The real test, therefore, as to whether or not, in a particular case, a carrier is a common carrier of passengers, is whether it holds itself out to the public as engaged in the business of carrying passengers, and that it will, so long as it has room, carry persons coming to it for that purpose, * * *

"*Public and private carrier distinguished.* The distinction between a public or common carrier of passengers and a special or private carrier of the same is that it is the duty of the former to receive all who apply for passage, so long as there is room and no legal excuse for refusing, while such duty does not rest on the latter, and this distinc-

tion, as stated in Corpus Juris, has received judicial approval.

\* \* \* \* \* \*

"As a general rule, a common carrier of passengers is bound to receive for carriage without discrimination all proper persons who desire and properly offer to become passengers, if the accommodations are sufficient, unless some special reason or excuse exists for refusing them; and in some jurisdictions this duty is expressly prescribed by constitutional or statutory provisions. This duty, especially in the cases of railroads and street railroads, arises, independent of contract, from the public character of the carrier's business, and is regarded as a public duty. A railroad company, therefore, has no right to discriminate by selling tickets to some persons and refusing them to others without a good excuse; \* \* \*

"*Discrimination on account of race or color.* The obligation imposed by law on carriers of passengers to receive for carriage all properly behaved and otherwise unobjectionable persons that may apply and that have complied with all reasonable precedent regulations precludes the carrier from refusing an intended passenger on account of race or color."

9 Am.Jur. 430 et seq., verbo "Carriers", §§ 4, 10, puts it this way:

"\* \* \* a common carrier may be defined, very generally, as one who holds himself out to the public as engaged in the business of transporting persons or property from place to place, for compensation, offering his services to the public generally. \* \* \* *The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence he is regarded, in some respects, as a public servant. \* \* \**" (Emphasis supplied.)

"§ 10. *Distinction between Common and Private Carriers.—Private carriers are distinguished from common carriers in respect of (1) the obligation to carry and (2) the liability for loss or injury. The former are not bound to carry for any reason unless the obligation to do so is voluntarily assumed by virtue of a special contract, and are liable for only such loss or injury as results from a failure to exercise ordinary care; the latter are bound to carry for all who choose to employ them \* \* \*.*" (Emphasis supplied.)

The Courts of Louisiana, where this contract of insurance was entered into, likewise have made this "right to refuse transportation" the critical criterion as to whether a carrier of passengers is "private" or "public". In Higginbotham v. Public Belt Railroad Commission, La.App., Orleans 1938, 181 So. 65, 69, a common carrier was defined as " \* \* \* a carrier which 'undertakes to carry for all people indifferently'." The same definition was followed in Brown v. Homer-Doyline Bus Lines, La.App., 2nd Cir., 1945, 23 So. 2d 348, 350, and that Court, in Bordelon v. State, La.App.1952, 59 So.2d 231, 239, found that the ferry boat there involved was not a common carrier because " \* \* \* the defendant had the right to refuse transportation."

The Fifth Circuit Court of Appeals, in Brown v. Pacific Mutual Life Ins. Co., 1925, 8 F.2d 996, 997, had before it a set of facts remarkably similar to those involved here. Plaintiff sued upon a policy of accident insurance which provided for double indemnity if bodily injury was sustained "while in or on a public conveyance \* \* \* provided by a common carrier for passenger service". The insured was killed while riding as a passenger in an airplane operated by a Lieutenant Whitted, who carried only white people, operated only under such conditions as pleased him, and did not pretend to maintain regular sched-

ules. In denying the claim for double indemnity, the Court said:

"From the above-quoted facts it is clear that Whitted was not a common carrier. *He assumed no duty to the public to carry them, and if he refused to do so without any reason at all no action would lie against him.* See Hutchinson on Carriers (3rd Ed.) §§ 47, 48." (Emphasis supplied.)

The Supreme Court of Alabama, in North American Accident Ins. Co. v. Pitts, 1925, 213 Ala. 102, 104 So. 21, 22, 40 A.L.R. 1171, had the same accident, but another insurance policy on the same insured, before it, and reached the same result. The policy provided for coverage if death of the insured resulted "* * * from bodily injuries * * * received * * * (1) while actually riding as a passenger in * * * (a) * * * public conveyance provided by a common carrier, for passenger service only". In reversing a jury award in favor of plaintiff, the Court found that, among other things, Whitted "* * * had the right to take only such persons as he saw fit; he took only white people, would not take negroes, or intoxicated persons; and it was generally understood that he was under no duty to take up passengers or make any trips unless it pleased him, or he saw fit to do so". The Court cited, in support of its ruling, a number of its own prior decisions, including one which held that:

"A common carrier of passengers is one who is engaged in a public calling, which imposes upon him *the duty to serve all without discrimination.*" (Emphasis supplied.)

The Court also quoted from 10 Corpus Juris 606, 607, § 1033, language virtually identical with that quoted above from Corpus Juris Secundum; and concluded that Whitted was not operating a "common carrier" within the plain meaning of the policy of insurance.

█ So it is here. The insuring clause here sued upon is plain, unambiguous and susceptible of only one interpretation. It is clear, we think, that the Sportsman was not operated as a "common carrier", hence, that plaintiffs' claim for "double indemnity" must be denied.

Plaintiffs have cited a number of cases [1] in support of their contentions, some of which actually are contrary to their position and the remainder are readily distinguishable. It would unduly lengthen this opinion to analyze them in detail here. They rely principally, however, upon Cummings v. Great American Casualty Company, 1931, 183 Minn. 112, 235 N.W. 617, and McBride v. McNally, 1914, 243 Pa. 206, 89 A. 1131, 52 L.R.A.,N.S., 259.

While the facts in Cummings in some respects were similar to those here involved, the Court clearly based its holding that the boat in question was a "common carrier" upon the operators' policy of carrying the public generally, never refusing to take anyone who paid the fare:

"There was nothing in their advertising or conduct otherwise indicating that they reserved the right or proposed to refuse any person or class of persons as passengers. * * The testimony of one of the owners is that, not only were the public generally invited to ride, but also that 'we never refused anybody.' 'We would haul them; we had to because we were operating for the public. If you bought a ticket and was going

---

1. Tilson v. Ford Motor Co., D.C., 130 F. Supp. 676; Ohio Oil Co. v. Fowler, 232 Miss. 694, 100 So.2d 128; United States v. Smith, 6 Cir., 215 F.2d 217; Rogers v. Crespi & Co., Tex.Civ.App., 259 S.W. 2d 928; Weinberger Banana Co. v. Phoenix Assur. Co., 5 Cir., 74 F.2d 539; Bob-Lo Excursion Co. v. People of State of Michigan, 333 U.S. 28, 68 S.Ct. 358, 92 L. Ed. 455; Ripley v. Railway Passengers' Assurance Co., 83 U.S. 336, 21 L.Ed. 469; Dunn v. New Amsterdam Cas. Co., 141 App.Div. 478, 126 N.Y.S. 229; Aetna Life Insurance Co. v. Frierson, 6 Cir., 114 F. 56, 57; Primrose v. Casualty Co., 232 Pa. 210, 81 A. 212, 37 L.R.A.,N.S., 618.

out, we had to take you. \* \* \* it was just the same as the public going to a picture show. \* \* \* We was operating the boat for the public.'

\* \* \* \* \* \*

"The next proposition for the defendant, *and it is the important one,* is that a common carrier must serve all who 'choose to employ him', \* \* The boat owners, so far as we can see, intended to serve all comers. They neither refused, nor intended to refuse, any one so long as they had the room necessary for his carriage." (Emphasis supplied.) 183 Minn. 112, 235 N.W. 617.

These facts, the Court said, distinguished Cummings from North American Accident Ins. Co. v. Pitts, supra, and Brown v. Pacific Mutual Life Ins. Co., supra, in that there " \* \* \* the owner carried only such persons as he saw fit. Among others, he refused to carry Negroes."

McBride was a damage suit brought against the owner of an excursion steamboat, which operated ordinarily as a common carrier, but on the date of the accident involved had been chartered by a church society. In refusing to reverse the lower Court for charging the jury that the boat was a common carrier, with attendant duties of care to its passengers, the Supreme Court of Pennsylvania said, 243 Pa. 206, 89 A. 1132:

"Whether the duty which ordinarily distinguishes common from private carriers—that of serving all without discrimination—attached to him is immaterial \* \* \*

"If, for technical reasons, he is to be excluded from the class of common carriers, such fact will not exempt him from the measure of liability the law imposes on these. The rule with respect to the liability of common carriers has very wisely been extended so as to include all engaged in the transportation of passengers when such transportation is attended with danger to life

or limb, and the care and diligence is proportionate to the danger to the person carried."

 Clearly, these cases are not apposite here. For the reasons given, therefore, there being no genuine dispute as to any material fact, this is a proper case for granting defendant's motion for summary judgment. It is so ordered.

Proper decree should be presented on notice.