Mary Hicks SEMON et al., Appellants,

v.

ROYAL INDEMNITY COMPANY, Appellee.

No. 18228.

United States Court of Appeals Fifth Circuit.

June 9, 1960.

Henry A. Politz, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, La., for plaintiffs-appellants, Harry V. Booth, Shreveport, La., of counsel.

Richard H. Switzer, Shreveport, La., for appellee, Lunn, Iron, Switzer, Trichel & Johnson, Shreveport, La., of counsel.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Presented here is the question whether one chartering a fishing vessel to fishing parties is engaged in the operation of a public vessel as a common carrier of passengers. The District Court on summary judgment gave a negative answer. 179 F.Supp. 403. We affirm.

The issue arises under an insurance policy issued by the Insurer to Semon, the decedent. The principal sum of $20,-000 was payable upon the occurrence of the Insured's death by accidental means. This was paid as it was conceded that Semon's death while a passenger on the M/V Sportsman was accidental. The policy further provided, however, that the "amount payable under * * * this policy shall be doubled if such injuries are sustained by the Insured (1) while a passenger in or upon a public conveyance provided by a common carrier for passenger service * * *."

The specific question then is whether Semon was [a] a passenger upon [b] a public conveyance [c] provided by a common carrier for passenger service.

The facts are few and simple. In the record they are confined to those set forth in the complaint and not denied by the Insurer plus the affidavit of the owner and operator of the vessel which, for summary judgment, F.R.Civ.P. 56, 28 U.S.C.A., supplants the bare conclusionary allegations in the complaint that the Sportsman "is a public carrier and was being operated as a public carrier," or the like.

The M/V Sportsman is a passenger-carrying motorboat classed by the Coast Guard as a Class III motor vessel approximately 60 feet in length. She was owned and operated by Captain Bryant out of Bayou LaBattre, Alabama. The boat was licensed by the Coast Guard to carry up to 40 passengers. As it was used for fishing parties, that number would not ordinarily be carried. The average was 8 to 10 people in each party.

The factual affidavit of Captain Bryant, given in question and answer form and thereby free of the argumentative

conclusions sometimes encountered, was in no way denied. The plaintiff made no reponse either challenging any fact or seeking leave to controvert by affidavit or deposition, F.R.Civ.P. 56(f). It can be summarized quickly. Captain Bryant does not carry individual passengers. People frequently come to the dock seeking to go out on his boat. He invariably turns them down. He confines his activities to chartering the boat to groups referred to as fishing parties. He is not concerned with the identity of the persons comprising a group, but he does determine whether he desires to, or will, charter it to the group represented by a specific individual either known or considered acceptable to him. The charge is a flat rate per day for the use of the boat without regard to the number of persons in the party. Those desiring to charter the boat have to make arrangements generally long in advance and if the charterer is acceptable to him, the boat is reserved for the time indicated.

■ Semon, the deceased, was a member of a party to whom the boat was chartered. Consequently, there is no dispute that at the time of his accidental drowning, May 30, 1958, when the M/V Sportsman was approximately 400 yards NNE of Beacon B, Pass Aux Heron, Alabama, he was, within the policy language, a passenger. But that is not sufficient. The additional policy coverage required two things: first, that the boat was a public conveyance and second, that it was provided by a common carrier. We regard the combination of these two elements to be the equivalent of a requirement that at the time of the accidental drowning, the M/V Sportsman was then being operated as a common carrier of passengers.

■ There is scarcely any field of law more ancient or more written on than that of carriers. So in solving this insurance case, it is not surprising or disturbing that "we must work with ancient markers whose general fitness is reflected by their adaptability to the changing world of commerce and transportation." Home Insurance Co. v. Riddell, 5 Cir., 1958, 252 F.2d 1, 2. There in determining that a motor carrier of cotton actively engaged in solicitation and transportation on a large scale was nonetheless a contract, not a common, carrier, we emphasized the critical point that the "distinction in status * * * comes about from the nature of the holding out." 252 F.2d 1, at page 3. There are many ways to say it, but none is better than the familiar one that "the distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently * * *." 9 Am. Jur., Carriers, § 4, p. 431. See also 13 C.J.S. Carriers § 3. The same principles apply to carriage by water, as well as by land. "Carriers by water, holding themselves out to the public as carriers of passengers, are * * * common carriers of passengers. A company which maintains boats for the sole and exclusive use of its own patrons is engaged in the business of a private carrier and is not subject to rules applicable to common carriers." 80 C.J.S. Shipping § 174, p. 1084.

■ On these familiar principles exemplified with unique pertinence because each likewise involved Alabama accidents under Alabama contracts of carriages in the cases of Brown v. Pacific Mutual Life Ins. Co., 5 Cir., 1925, 8 F.2d 996, and North American Accident Ins. Co. v. Pitts, 1925, 213 Ala. 102, 104 So. 21, 40 A.L.R. 1171, we agree with the District Court that there was no arguable issue of fact, and that the M/V Sportsman was not engaged as a common carrier of passengers.

■ In so deciding, we can assume as contended by the Insured that one could become a common carrier of fishing parties (groups). But that would require a holding out on the part of the operator of the vessel of a willingness to carry on the same terms and conditions any and all groups no matter who they might be. But the facts are clear that Captain Bryant never held himself out for such service. He chose the groups to whom he would charter his vessel. We agree with the Insured that when a person holds himself out to carry all—either everyone

or persons or property of a particular identifiable category—reservations, secret or disclosed, or a refusal to serve is of no consequence. The common carrier's duty to serve all indifferently cannot be lessened by a violation of that duty. The cases so strenuously pressed by the Insured correctly state this and nothing more. Circle Express Co. v. Iowa State Commerce Comm., 1957, 249 Iowa 651, 86 N.W.2d 888; Lloyd v. Haugh & Keenan Storage & Transfer Co., 1909, 223 Pa. 148, 72 A. 516, 21 L.R.A.,N.S., 188; Cushing v. White, 1918, 101 Wash. 172, 172 P. 229, L.R.A. 1918F, 463. Nor are the other cited cases of any assistance. Dunn v. New Amsterdam Casualty Co., 1910, 141 App. Div. 478, 126 N.Y.S. 229, and McBride v. McNally, 1914, 243 Pa. 206, 89 A. 1131, 52 L.R.A.,N.S., 259, concerned vessels regularly used as common carriers chartered for similar service to a group at the time of the occurrence in suit. In Cummings v. Great American Casualty Co., 1931, 183 Minn. 112, 235 N.W. 617, the boat was open to public use for all who paid the stated fare.

We do not regard as of any significance the presence or the absence of published tariffs or the presence or lack of governmental control. Except for safety which has long been committed to the Coast Guard or its predecessors, carriage of passengers by water has until recently been relatively free from all such regulatory controls. See 49 U.S.C.A. § 901 et seq. And even as to this limited regulation a careful distinction is made between a "common carrier by water" and a "contract carrier by water." 49 U.S. C.A. § 902(d) and (e). Even there chartering of a vessel is normally deemed a type of contract, not common, carriage. 49 U.S.C.A. § 902(e).

As the uncontradicted facts showed that Captain Bryant did not hold out the M/V Sportsman to all of the public indifferently, or even to all groups who might come as fishing parties seeking a charterparty, and on the contrary he reserved the right to choose when and to whom he would charter the vessel, its use on the occasion of Semon's drowning was not that of a public vessel furnished or provided by a common carrier. Summary judgment was therefore proper as the requirements of double indemnity provision of the policy were not satisfied.

Affirmed.