Gerald HAMMERLIND, as Trustee for the Heirs and Next-of-Kin of Richard Hammerlind, Decedent, Respondent-Appellant.

v.

CLEAR LAKE STAR FACTORY SKYDIVER'S CLUB, a.k.a. Clear Lake Skydiver's Club, a.k.a. Star Factory Club, et al., Defendants,

Leader's Flying Service, Inc., et al., Respondents-Appellants,

Ron Kilian, Appellant-Respondent.

Nos. 46934, 46935 and 46956.

Supreme Court of Minnesota.

Sept. 9, 1977.

Roger J. Nierengarten and Geoffrey J. Gempeler, St. Cloud, for appellant.

Dean K. Johnson, Trygve A. Egge, and Ronald M. Michaelson, Minneapolis, for Leader's Flying Service, Inc., et al.

Sahr, Kunert & Tambornino, Minneapolis, and Roger T. Sahr and Paul C. Kunert, for respondent.

Heard before SHERAN, C. J., PETER-SON, and TODD, JJ., and considered and decided by the court en banc.

PER CURIAM.

This appeal consolidates three appeals from an order of the Stearns County District Court denying plaintiff's motion for a new trial. Defendants secured directed verdicts at the close of plaintiff's evidence. We affirm.

This is an action for the wrongful death of Richard Hammerlind. Plaintiff's decedent (hereafter Hammerlind) drowned when he parachuted into a lake. Plaintiff's evidence, when viewed in the light most favorable to him, revealed that Hammerlind joined the Clear Lake Star Factory Skydiver's Club on November 16, 1973, to learn to skydive. Hammerlind paid a $50 fee which covered equipment use and instruction for 5 parachute jumps, and signed a release in order to skydive with the club.

Later in November, after several hours of instruction, he made his first jump. The jump, as did all other pertinent skydiving activity, originated from an airport owned and operated by defendant Robert Leaders near Clear Lake, Minnesota. The airport contained an approved skydiving drop zone. Hammerlind touched down after his first jump on the median of nearby state Highway No. 10.

On July 14, 1974, Hammerlind returned to the airport for his second jump. After further instruction, Hammerlind joined three other jumpers in the last flight of the day. The plane was piloted by defendant Ron Kilian. Kilian had also been the pilot for the November jump and was an experienced jumper. Hammerlind jumped from the plane at approximately 3000 feet, with a static line opening his chute. He was followed immediately by defendant Rick Schwandt, his jump master. They descended halfway in close proximity, but then separated. Schwandt landed on the airfield and Hammerlind, driven by a northwesterly wind, landed in Camp Lake. The club members endeavored to rescue Hammerlind, but were unsuccessful. Testimony indicated that when he was pulled from the lake, he was not wearing a flotation device.

■ Plaintiff brought suit against various individuals, but only Robert Leaders and Leaders' Flying Service, Inc. (hereafter Leaders), and Ron Kilian interposed answers. Plaintiff charged Leaders with negligence in permitting skydivers to use his airport after he had learned that jumpers were landing in the neighboring countryside. Plaintiff charged Kilian with negligence in permitting Hammerlind to jump without proper equipment. The district court granted each defendant's motion for a directed verdict, finding no negligence on the part of any defendant, and alternatively holding that the release Hammerlind signed barred the action. Plaintiff moved for a new trial. The district court denied the motion because of the absence of negligence, but suggested the release would not have barred the action. From that decision,

all parties appeal. We dismiss the appeals of defendants Leaders and Kilian. Since they were not aggrieved by the district court's order, they have no standing to appeal. *Twin Cities Metropolitan Public Transit Area v. Holter*, Minn., 249 N.W.2d 458 (1977). At issue in the remaining appeal is the propriety of the verdicts directed for defendants Kilian and Leaders.

The district court found that Kilian, the pilot, was not negligent as a matter of law. It reasoned that neither Minnesota Department of Aeronautics regulations nor the common law imposed a duty on the pilot to ensure that each skydiver was properly outfitted. The court felt that this duty devolved to individuals more closely associated with instructing Hammerlind in skydiving.

Regulations of the Department of Aeronautics deal with parachuting in some detail. The Department has promulgated an entire alphabet of safety regulations. Minn. Reg. Aero 36. Furthermore, parachuting clubs must be licensed, maintain records, establish an approved curriculum, use certified instructors, and carry insurance. Minn. Reg. Aero 38. It is the personal responsibility of the club safety officer or his assistants to enforce the regulations. Minn. Reg. Aero 38(a)(8).

Plaintiff cites one of the safety regulations as establishing a standard of care, which the evidence suggests was not met. Minn. Reg. Aero 36(k) states in part: "Mae West type or Coast Guard approved type flotation gear must be worn when parachuting into or within one mile of an open body of water." It is undisputed that the regulation is applicable in these circumstances; the controversy concerns whether the standard of care it evinces is applicable to the pilot.

■ Several safety regulations speak directly to the pilot. Minn. Reg. Aero 36(d), (g), (*l*), (p), (q), (r). Although these regulations are related largely to flying the aircraft (e. g., minimum visibility), the pilot is

also responsible for checking the age[1] of the parachutists and checking whether they appear to be under the influence of intoxicating liquor or drugs that affect their safety.[2] It is reasonable, perhaps, to argue that the pilot should ensure that the jumpers have flotation gear as well. But the negative implication of the regulations is more persuasive: Since the department did not explicitly hold the pilot responsible for equipment checks, as it did for other precautions, it implicitly intended not to hold pilots to that duty. This interpretation comports with the testimony advanced at trial, which established that equipment checks were the responsibility of the jump master. We hold that the regulations do not impose a duty on the pilot to ensure that each jumper wear a flotation device.

■ Plaintiff argues that apart from the regulations the common law imposes a duty on the pilot to check equipment. Kilian as a private carrier[3] owed Hammerlind as a passenger a duty to exercise care for his safety. See, *Lange v. Nelson-Ryan Flight Service, Inc.,* 259 Minn. 460, 108 N.W.2d 428 (1961); 8 Am.Jur.2d Aviation, § 69. But plaintiff does not cite any negligence on Kilian's part in flying the aircraft; instead, he cites the great danger faced by anyone who parachutes out of a plane in flight to suggest that a reasonable pilot would check each jumper's equipment. The

argument might be persuasive if no one else had the duty to check a student jumper's equipment. But in light of the regulations and testimony, it appears that a reasonable pilot could rely on the jump master to perform that duty. The result might well be different if a pilot knew or had reason to know that a jumper from his plane lacked required equipment, but no evidence suggests that circumstance here. Consequently, the district court's direction of a verdict for defendant Kilian on the basis of lack of duty was not error.

■ Plaintiff argues that Leaders as a landowner had a duty to stop dangerous activities taking place on his land. The question presented is whether, assuming that Leaders had notice that jumpers had landed in the lake,[4] he was liable for not closing his airport to skydiving activity. Although Hammerlind's death did not occur on Leaders' property, we assume that Leaders owed him a duty to exercise reasonable care in the circumstances, since an approved drop zone was located on his property. See, generally, *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972).

The district court, relying on Restatement, Torts 2d, § 343A, which we approved in *Peterson v. W. T. Raleigh Co.,* 274 Minn. 495, 144 N.W.2d 555 (1966), reasoned that the lake presented an obvious danger to

---

1. Minn. Reg. Aero 36(g) provides: "Parachutists and student parachutists must have reached the age of legal majority, or be at least 16 years of age with written, notarized parental or legal guardian consent. It shall be the responsibility of the pilot of the aircraft or the Club Safety Officer to inspect personally the notarized consent documents of jumpers between 16 and legal majority."

2. Minn. Reg. Aero 36(p) provides: "No person may make a parachute jump and no pilot in command of an aircraft may allow any person to make a parachute jump from that aircraft if that person appears to be:
   (1) Under the influence of intoxicating liquor.
   (2) Using any drug that affects his faculties in any way contrary to safety."

3. Since there is no evidence that Kilian held himself out to the public generally to transport parachutists, plaintiff's attempt to characterize him as a common carrier must fail. E. g., *Cummings v. Great American Casualty Co.,*

183 Minn. 112, 235 N.W. 617 (1931); *Semon v. Royal Indemnity Co.,* 279 F.2d 737 (5 Cir. 1960). See, generally, Annotation, 73 A.L.R.2d 346.

4. Plaintiff cites as error the district court's restriction of the testimony of one witness concerning previous parachute landings in Camp Lake. Plaintiff attempted to elicit the testimony to show notice on the part of Leaders that jumpers were landing off his property in dangerous locations. The district court felt that the testimony was irrelevant absent further evidence about the circumstances of the jumps because the Department of Aeronautics regulations sanction intentional water jumps. Minn. Reg. Aero 35(h)(7). Because of the procedural posture of this case, we need not resolve this issue. Another of plaintiff's witnesses testified that he mentioned to Leaders that jumpers had landed in the lake.

parachutists and that Leaders should not reasonably have anticipated harm despite the obviousness. We agree. Section 343A(1) states:

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

Camp Lake posed an obvious danger to parachutists, given its proximity to the drop zone and the danger of water generally to jumpers. Moreover, the evidence did not suggest that Leaders should nonetheless have anticipated harm would result. Such an accident had not occurred before and, even more than the pilot, Leaders could rely on the skydiving instructors and club to check the equipment of the jumpers.[5]

The other issues raised by the parties either merit no discussion or are rendered moot by the issues discussed.

Appeal No. 46935: Affirmed.

Appeals Nos. 46934 and 46956: Dismissed.

---

5. Because of our disposition of this issue, we need not consider the applicability of the recreational use statute, Minn.St. c. 87. For a comprehensive discussion of this and similar statutes, see, Note, 3 Wm. Mitchell L. Rev. 117.